Argued March 10, reversed March 30, 1915.

# WETHERBY *v.* GRISWOLD.*

## (147 Pac. 388.)

**Vendor and Purchaser—Option to Purchase—Necessity for Acceptance.**

.1.  Where plaintiffs' decedent took a lease of land which gave him an option to purchase, the option could be converted into a valid contract of sale binding upon both parties only by an unqualified acceptance by the decedent within the time prescribed in the option.

**Specific Performance—Discretion of Court.**

2.  A court of equity will not decree specific performance of a contract for the sale of land unless the circumstances of the case commend it to its sound and reasonable discretion.

> [As to discretion to grant specific performance, see notes in 128 Am. St. Rep. 384; 140 Am. St. Rep. 57. As to specific performance of contracts, see note in 23 Am. Dec. 423.]

**Vendor and Purchaser—Encumbrances—Compensation to Buyer.**

3.  Where plaintiffs' decedent took a lease of land, with an option to purchase, knowing that defendant's title did not cover all the land, but that part was subject to the right of a railroad to build a station thereon, in suit for specific performance of the contract to convey after exercise of the option, such decedent could not set up the existence of the encumbrance to abate the price.

**Vendor and Purchaser—Encumbrance on Land—Compensation to Buyer.**

4.  The existence of an open, notorious and visible physical encumbrance upon land gives no ground to the purchaser for compensation therefor by way of abatement in the price; the presumption being that the existence of the encumbrance was considered in fixing the price, it being obvious.

**Specific Performance—Contracts Enforceable—Land Visibly Encumbered.**

5.  In an action for specific performance of a contract to sell land, where the premises were notoriously subject to the right of a railroad to build a depot upon a portion thereof, and the plaintiffs' decedent knew that such was the case, the defendant should not be required to convey such portion with covenants of warranty.

From Multnomah: HENRY E. McGINN, Judge.

---

*Upon the right of a vendee to specific performance with abatement from the purchase price, where the vendor is unable to convey good and unencumbered title, see notes in 10 L. R. A. (N. S.) 117 and 38 L. R. A. (N. S.) 1195.                REPORTER.

Department 2.   Statement by MR. JUSTICE BEAN.

This is a suit by George Wetherby (the Title & Trust Company, a corporation, with the will annexed of the estate of George Wetherby, deceased, Margarita Sanders and Anna Duncan, heirs at law of said George Wetherby, deceased, substituted as plaintiffs), against Jennie M. Griswold to enforce the specific performance of a contract to purchase land. The trial court decreed that defendant execute a conveyance and receive from plaintiff $1,760 deposited in court, and the additional sum of $1,500. Defendant appeals therefrom. Plaintiff also appeals from that portion of the decree requiring the payment of the $1,500. As shown by record, on May 5, 1906, Jennie M. Griswold, as lessor, and George Wetherby, now deceased, as lessee, entered into a written lease and contract, whereby the former leased unto the later, his executors, administrators and assigns, from March 30, 1906, until March 30, 1909, the following described premises:

"Lots one (1), two (2), and three (3) in section seven (7), in township one (1) north, range six (6) E., W. M., containing one hundred and sixty-one and 76/100 (161.76) acres of land, more or less, according to the government survey thereof, lying and being in Multnomah County, State of Oregon, subject to the right of way of the O. R. & N. R. R. Co.'s track as established, constructed, and operated over and upon said premises. To have and to hold the same unto the said lessee for the term of three (3) years from and after the thirtieth day of March, A. D. 1906, the said lessee paying therefor the annual rent of one hundred and twenty ($120.00) dollars per year, viz., March 30th, 1906, March 30th, 1907, and March 30th, 1908, with the right and privilege of the said lessee to demand and receive a warranty deed of said premises, as hereinbefore described, on demand, in writing

on or before the expiration of said term of three years, aforesaid, on payment of the sum of two thousand ($2,000.00) dollars cash at delivery of such deed and certified abstract of title showing clear and unencumbered title in said lessor or lessors, less any and all sums paid as rent, under the terms of this lease, prior to demand in writing for such deed. * * "

The lease contained the usual covenants of payment and surrender, and was duly signed, witnessed, acknowledged and recorded. Wetherby made the first two payments of $120 each within the dates specified. On March 20, 1908, he made written demand for a deed, that part of which deemed material is here set forth:

"Portland, Oregon, March 20th, 1908.

"To Jennie M. Griswold, 1120 Connecticut Avenue, Washington, D. C.:

"The undersigned [here follows a description to the lease and option to purchase containing a description of the land] hereby makes demand, in writing, of and from said lessor and vendor aforesaid, for warranty deed conveying said premises above described according to the terms and conditions of said lease and contract for deed to said George Wetherby aforesaid on payment of the sum of two thousand ($2,000.00) dollars, less the sum of two hundred and forty ($240.00) dollars heretofore paid as annual rent of said premises, in fulfillment of the terms and conditions of said lease and contract for deed aforesaid.

"Very respectfully,
"[Signed] GEORGE WETHERBY,
"Lessee and Vendee."

Miss Griswold was a nonresident of this state during the time of the negotiations which were carried on between Wetherby and her by correspondence, much of which was conducted on her part by her brother and a part through her attorneys. After several communications between the parties, about August 3, 1909,

defendant executed to Wetherby a warranty deed of the land as described in the lease, except as to the right of the Oregon Railroad & Navigation Company, which appears therein as follows:

"And it is provided always, nevertheless, that the present conveyance is made and accepted with full notice of and subject to all and singular such lawful rights in, to or touching the said lands as may belong to the Oregon Railroad & Navigation Company, its successors and assigns."

This deed was forwarded to a bank in Portland, Oregon, by the defendant, claiming that the option contract was not then in force, to be delivered to Wetherby upon the payment of a draft accompanying the same for $1,740, allowing $20 for some taxes. All of this Wetherby was notified of by letter. The deed was thereby tendered. This, with the abstract of title, he had examined by an attorney. The latter instrument showed, as was well known to Wetherby during all the time, that a 20-acre tract was reserved from the land for the depot grounds of the Oregon Railroad & Navigation Company. The deed was not accepted nor the draft paid. Wetherby wrote the attorney in part:

"I have always been ready and willing and able to carry out my contract and accept a deed of conveyance for the land as provided therein on the date of said contract. Since your client is unable to deliver the 20 acres station grounds of the O. R. & N. Co., I am now as ready and able and willing to accept a deed for the balance of said land, to wit, 141.76 acres, less said railroad right of way, making a proportionate deduction for the number of acres deficient which said deed is to convey the title that your client had May 5, 1906, the date of said contract."

August 17, 1909, Wetherby tendered to defendant in writing $1,513 for a deed, subject to the station grounds of 20 acres and right of way of the Oregon Railroad & Navigation Company. On the 19th of that month Wetherby again tendered $1,740 balance, and demanded a warranty deed of the real estate subject to the right of way mentioned. Defendant alleges in her answer to the effect that at the time she executed the lease, being in ill health and suffering from a nervous breakdown, she was incapacitated from intelligently transacting business; that Wetherby, knowing the same, and knowing the property and the condition of the title, induced her through her brother to believe that, under the terms of the lease, in the event he should desire to purchase the property, the title to be conveyed would be the same as she then had. She also alleges that Wetherby wrongfully demanded a title that he at all times knew she did not have, and that he was in default in the payment of rent as per terms of the lease She states she made the tender of the deed to avoid litigation. The reply put in issue the new matter of the answer. After the commencement of this suit Wetherby died, and the present plaintiffs were substituted.                                        REVERSED.

For appellant there was a brief with oral arguments by *Mr. Clyde Richardson* and *Mr. W. D. Freeman.*

For respondent there was a brief over the names of *Mr. Frank Schlegel, Mr. O. P. M. Jamison, Mr. Ben C. Dey* and *Mr. Elmer E. Coovert,* with an oral argument by *Mr. Schlegel.*

MR. JUSTICE BEAN delivered the opinion of the court.

1. It appears from the record that after the lease was prepared and forwarded by Wetherby for Miss

Griswold to sign some question was raised as to the provision for a deed in case of purchase. The United States patent for the land to defendant's father, from whom she received a deed, did not mention the right of way or depot grounds of the railroad company. Anent this matter, on October 31, 1905, Wetherby wrote the defendant's brother, W. T. Griswold, in part as follows:

"The Patent purports to convey 161.76 acres, about twenty acres of which the O. R. & N. R. R. Co. holds, as station grounds, acquired under the Provs. of the Act of Cong. dated March 3rd, 1875, practically 141.76 conveyed by the Patent, as the R. R. Co. will doubtless continue to occupy above mentioned twenty acres indefinitely."

On April 12, 1906, Wetherby wrote the same party in part:

"Cannot entertain any change in terms of lease, as executed by me and transmitted with former letter. * * The lease mentioned described the property subject to R. R. R. of W., as established, constructed and operated over said premises. Later provision, Right to lessee to receive Warranty deed of said premises, as hereinbefore described 'Now, as the patent describes the land as Lots 1–2 & 3 in Sec. 7 Tp. 1 N. 6 E. W. M. 161.76/100 acres subject to any vested and accrued water rights, for mining, agricultural, manufacturing or other purposes, A Warranty Deed describing the premises and designated, as Lots 1–2 & 3 in sec. 7, as above described quoting the exception, quoted above *will convey the premises, as conveyed by the patent, which is the intention of all parties interested* in sale and purchase, contemplated, therefore there is no ground for objection to form of deed mentioned in the lease."

This correspondence clearly shows that at all times during the negotiations Wetherby knew of the ex-

istence of the depot grounds. As to the force of his construction of the clause relating to the conveyance in case he elected to purchase the land, we do not deem it necessary to inquire further than as the same affects the equities which are now prayed for by Wetherby's representatives. It would at least seem fair to say that Wetherby had put his own construction upon this clause of the option, and, in conformity therewith, the defendant tendered to him a conveyance of the property, which he refused. The option contract contained in the lease set out above was unilateral. This could only be converted into a valid contract of sale binding upon both parties by an unqualified acceptance by the optionee within the time prescribed therein: *Friendly* v. *Elwert,* 57 Or. 599, (105 Pac. 404, 111 Pac. 690, 112 Pac. 1085, Ann. Cas. 1913A, 357.)

2, 3. An application to invoke the jurisdiction of a court of equity to decree the specific performance of a contract is addressed to its sound and reasonable discretion, and is granted or rejected according to the circumstances of each case. Such power cannot be invoked as a matter of right in the parties in all cases: 36 Cyc. 548; 2 Story, Equity Juris. (13 ed.), § 742; *Hawkins* v. *Doe,* 60 Or. 437, 446 (119 Pac. 754, Ann. Cas. 1914A, 765). When the ground of the defense is the unfairness of the contract or the hardship of the remedy of specific performance, the court frequently exercises a discretion in the truest sense, since the great variety in the forms of unfairness and of hardships which have arisen for consideration has prevented the establishment of many special rules for the guidance of the courts: 36 Cyc. 551, b. Let us then examine the case at bar from an equitable standpoint. The objection to the title offered to be conveyed by

Miss Griswold to Wetherby was made by him on account of the depot grounds upon the premises. The records show that many excursionists visit Multnomah Falls, situated upon the land of the defendant, and in order to accomodate such travel the Oregon Railroad & Navigation Company uses the depot grounds for trainloads of passengers visiting the pleasure resort. The occupancy of the 20-acre tract by the railroad company was notoriously obvious. From the letter of Wetherby it appears beyond question that he knew of the extent of the holdings of the railroad company. It does not appear from the lease or option memorandum that it was the intention of the parties thereto that defendant would obtain the right to the depot grounds of the Oregon Railroad & Navigation Company. This cannot reasonably be presumed. On the other hand, in very general way the writing indicates that there was to be a reservation of the right of the company, but the length, width or total area were not attempted to be stated. Under all the circumstances it was not in consonance with equity and fair dealing for Wetherby to demand an abatement in the purchase price on account of the depot grounds.

4. This rule is stated in 36 Cyc., page 742:

"If the purchaser at the time of entering into the contract was aware of the defect in the vendor's interest or title, or deficiency in the subject-matter, he is not, on suing for specific performance, entitled to any compensation or abatement of price."

See, also, Waterman on Specific Performance, section 506. Maupin on Marketable Title (2 ed.), page 197, is authority for a stronger general rule, to the effect that the existence of an open, notorious and visible physical encumbrance upon the estate is not a ground for objection to the title, for the reason that

it is presumed that the purchaser was to take subject to such encumbrance. Neither does such encumbrance entitle the purchaser to compensation, nor to an abatement of the purchase money, nor to a conveyance with a covenant against the encumbrance, because it is presumed that in fixing the price the existence of the same was taken into consideration. The last-named rule was applied in a law action in the case of *Barnum* v. *Lockhart, post,* p. 528, (146 Pac. 975). In that opinion Mr. Justice McBride, suggests the following:

"Without reference to authority, it seems reasonable that, where the existence of so palpable a physical easement as a railroad is urged as an objection to the title, the burden of pleading and proof should be upon the purchaser to show that he was, in fact, ignorant of its existence."

See, also, *Desvergers* v. *Willis,* 56 Ga. 515 (21 Am. Rep. 289); *Ashburner* v. *Sewell,* 3 L. R. Ch. Div. 405. The language of Mr. Justice Spencer in *Whitbeck* v. *Cook & Wife,* 15 Johns. (N.Y.) 483 (8 Am. Dec. 272), quoted in *Jordan* v. *Eve,* 31 Gratt. (72 Va.), at page 8 of the opinion, is very applicable to this case:

"It must strike the mind with surprise that a person who purchases a farm through which a public road runs at the time of purchase, and had so run long before, who must be presumed to have known of the existence of the road, and who chooses to have it included in his purchase, shall turn around on his grantor and complain that the general covenants in the deed have been broken by the existence of what he saw when he purchased, and what must have enhanced the value of the farm. It is hazarding little to say that such an attempt is unjust and inequitable, and contrary to the universal understanding of both vendors and purchasers. If it could succeed, a floodgate of litiga-

tion would be opened, and for many years to come this kind of action would abound.''

5. Where the encumbrance upon the real property is an easement which the vendor cannot remove as a matter of right, and it does not appear from the option contract that it was within the contemplation of the parties at the time of making the agreement that the condition of the title would be changed in this respect, the fact that the vendee had full knowledge of the occupancy and right of a third party is a strong reason for applying the general rule that the existence of an open, notorious, and visible encumbrance upon the land constitutes no basis for an objection to the title: Maupin on Marketable Title, 197, and notes. In the present case the controversy relates to the enjoyment of an easement and right openly, and notoriously exercised for a *quasi*-public purpose. It is indeed probable that the depot grounds being located upon the premises were an important factor in inducing Wetherby to attempt to make the purchase. J. M. Griswold offered Wetherby all the title to the land that she had. She therefore did all in her power to comply with his demand. He declined to accept the title tendered, and it is not in furtherance of equity to require the defendant to execute a conveyance with covenants of warranty to real estate which she does not own, and which, according to Wetherby's construction of the contract, she never intended to sell. Such a decree would tend only to lead to further complications. The plaintiffs are not entitled to equitable relief: *Mills* v. *Van Voorhis,* 23 Barb. (N. Y.) 125; *Whitney Co. v. Smith,* 63 Or. 187, 192 (126 Pac. 1000).

In an endeavor to arrange the matter equitably, the trial court required the plaintiffs to pay $1,500 in ad-

dition to the price named in the option, as we understand, contemplating that the parties would accept the same as a settlement. This was not an issue in the case.

The decree of the lower court will therefore be reversed, and one entered in favor of the defendant dismissing the suit; defendant to recover costs.

Reversed.

Mr. Chief Justice Moore, Mr. Justice Benson and Mr. Justice Harris concur.