# CHARLES RAITH

*vs.*

## JACOB COHEN.

*Sale of Land—Unjustified Demand by Purchaser—Release of Easement—Specific Performance.*

That one, though knowing, at the time of his purchase of land, of an easement on the property, insisted, for a period of five months, upon a release of the easement, was tantamount to a refusal to perform his part of the contract of sale, precluding him from asking specific performance.                    p. 49

A purchaser, by insisting for five months upon a demand in regard to the title, which he had no right to make, forfeited his right to relief by specific performance.                    p. 50

*Decided December 21st, 1922.*

Appeal from the Circuit Court No. 2 of Baltimore City (CARROLL T. BOND, J.).

Bill by Charles Raith against Jacob Cohen and Ernest T. Newell, trading as E. T. Newell & Co., asking for specific performance as against said Cohen. From a decree dismissing the bill, plaintiff appeals. Affirmed.

The cause was argued before BOYD, C. J., BRISCOE, THOMAS, PATTISON, URNER, STOCKBRIDGE, ADKINS, and OFFUTT, JJ.

*Edwin T. Dickerson,* with whom were *William Duncan* and *Lindsay C. Spencer* on the brief, for the appellant.

*Vernon Cook,* for the appellee.

THOMAS, J., delivered the opinion of the Court.

The appellee, Jacob Cohen, being the owner of two lots of land in Baltimore City, one an improved lot on the northwest corner of Park Heights Avenue and Belvidere Avenue, and the other a vacant or unimproved lot on Belvidere Avenue, and desiring to sell the same, caused to be inserted in the Baltimore Sun, a daily newspaper, the following advertisement:

"Valuable Fee Simple Business Property, N. W. Cor. Park Heights and Belvidere Avenues, and Large Lot on Belvidere Avenue, at Public Auction, on the Respective Premises, Tuesday, June 7, 1921, 4 o'clock P. M.—Financed 75 Per Cent.

"Improvements consist of Store and Dwelling and Garage adjoining on Park Heights Avenue and vacant lot on Belvidere Avenue. Gas and Electricity. Steam Heat.

"Plat will be exhibited on day of sale, showing description of property.

"Terms: A deposit of $1,000 required of purchaser at time of sale; 75 per cent. of purchase price may remain on mortgage, or all cash, at the purchaser's option, balance within 30 days. All expenses adjusted to day of sale.

"E. T. Newell & Co.,
"Auctioneers."

In pursuance of the above advertisement, the lots were offered at public sale on the 7th of June, 1921, upon the terms therein stated, and sold for $25,900 to the appellant, who paid Mr. Newell, the auctioneer, $1,000 on account of the purchase-price.

The appellee and his counsel, Morton H. Rosen, Esq., were present at the sale, and on that day the appellant requested Mr. Rosen to send his counsel, Mr. Duncan, a reference to the appellee's deed for the lots, so that he could examine the title. This Mr. Rosen did by letter of June 20th, and at the

same time requested Mr. Duncan to notify him when the appellant would be ready for settlement. Notwithstanding the terms of sale required a settlement within thirty days, neither Mr. Rosen nor the appellee heard from the appellant or his counsel until July 16th, when Mr. Travers, who was associated with Mr. Duncan, went to see Mr. Rosen and stated that the delay was due to the fact that they were having the property surveyed. Mr. Rosen told him that there was a $10,000 mortgage on the property, which was several months overdue, and that it was necessary to have a settlement "as quickly as possible." On the 19th of July Mr. Duncan called up Mr. Rosen and arranged for an interview with Mr. Rosen and the appellee on the 20th. At that interview Mr. Duncan called attention to a number of judgments against "Jacob Cohen," and to the fact that there was an alley between the two lots which the appellant objected to, and stated to Mr. Rosen, according to Mr. Rosen's testimony, that the appellant was "not going to take" the property if he "had to take it with the alley." Mr. Rosen replied that he, Mr. Duncan, had read the advertisement and that the appellant was at the sale. He called Mr. Duncan's attention again to the overdue mortgage on the property and the necessity for a prompt settlement, and Mr. Duncan then said that he would talk to the appellant again and if he could get him to agree to take the property subject to the alley, "they would take it." On the same day Mr. Rosen wrote Mr. Duncan fixing 2 o'clock P. M., July 25th, 1921, as the time for settlement, and in reply Mr. Duncan wrote Mr. Rosen on July 22nd as follows:

"Baltimore, Md., July 22nd, 1921.

"Mr. Morton H. Rosen,

"723-27 Gaither Estate Bldg., City.

"Dear Sir:

"Yours of the 20th inst. received in reference to the property corner Park Heights and Belvidere Avenues, sold to Mr. Charles Raith. In reply will say that Mr. Raith will be ready to settle on Monday next, 25th inst., at 2 o'clock, provided you have arranged to

satisfy me in reference to any judgments against Mr.
Cohen.   The judgment sheet shows a great many
against a certain Jacob Cohen, and I suggested to you
at the interview that you have Mr. Cohen make an
affidavit that none of these judgments are against him
that show on the judgment report, and also give us a
corporate bond to protect us against any judgments
that show on the judgment report.

"I would also like to have the case disposed of at
Towson and the people sign off who have the right to
the use of the alley which I mentioned to you; and
Mr. Raith informs me that there was nothing said at
the time of the sale about anyone having any ease-
ments against the property or about the alley.

"I hope that you will have everything in readiness,
as Mr. Raith is very anxious and willing to settle on
Monday at 2 o'clock.

"Very truly yours,

"(Signed)   Wm. Duncan."

Owing to his absence from his office, Mr. Rosen did not re-
ceive Mr. Duncan's letter of the 22nd until the morning of
July 25th, when he immediately delivered to Mr. Duncan the
following reply:

"Baltimore, Md., July 25th, 1921.

"Mr. William Duncan, Esq.,

"Fidelity Building, City.

"Dear Sir:

"Your letter dated July 22nd, 1921, delivered by
registered mail, received by me this morning.

"I note you state that Mr. Raith will be ready to
settle on Monday next, 25th inst., at 2 o'clock, pro-
vided you have arranged to satisfy me in reference to
any judgments against Mr. Cohen.  I have arranged
the above mentioned time for putting this transac-
tion through with you last Wednesday, after I had
fully discussed with you the matters mentioned in
your letter, dated July 22nd, 1921.  With the excep-
tion of an order to pay one-half of the costs in any

equity case in Baltimore City, which, of course, Mr. Cohen will take care of at the settlement, there are no judgments against the Mr. Jacob Cohen interested as seller in this transaction. I am not concerned about any judgment or judgments against anyone else by the same name. Of course, Mr. Cohen will make an affidavit to the effect that, with the exception of the order above referred to, there are no judgments outstanding against him. In other words, Mr. Cohen will pay the costs in the above mentioned case at the time of settlement this afternoon, but he will not, as you suggest, give a corporate bond or any other bond against the judgments found on the report, for the reason hereinbefore stated. The law does not require a seller to give bond against judgments obtained against somebody else. Finally, in order to prevent a misunderstanding, such judgments as you can show are against my client, Mr. Jacob Cohen, will be taken care of at the settlement this afternoon without the necessity of a bond.

"Mr. Cohen entered an appeal in the magistrate case at Towson, in which a judgment of $15 was entered by the magistrate against him. The magistrate never sent the papers to court and subsequently the papers were lost, and the judgment was never recorded. Therefore, no lien on the property.

"You ask to have 'the people sign off who have the right to the use of the alley which I mentioned to you,' and, continuing to say, 'Mr. Raith informs me that there was nothing said at the time of the sale about anyone having any easements against this property, or about the alley.' The easement granting certain people the right to use the alley were conveyed by deed and all deeds recorded. A plat showing the alley was posted at the time of the sale, and as a matter of fact, Mr. Raith knew all about the alley and the easements therein prior to and at the time of the sale and at the time of sale carried away with him the plat which had previously been posted.

"I have answered every detail of your letter in full so that there can be absolutely no room for further delay in this matter.

"I will be ready at two o'clock this afternoon, as previously agreed between us, to put this deal through, and shall expect you to come to my office for that purpose at the time mentioned.

"Very truly yours,

"Morton H. Rosen,
"Attorney for Jacob Cohen."

On the 25th of July Mr. Rosen, the appellee, Mr. Duncan, the appellant, and Mr. Travers met at Mr. Rosen's office, and after discussing and arranging matters of insurance, water bills, and costs in a certain case, they agreed to meet again the following day at 1 o'clock to complete the settlement. The next day the meeting at the request of Mr. Duncan was again postponed until 3 o'clock. Mr. Duncan and the appellant did not go to Mr. Rosen's office at 3 o'clock, and after waiting there until nearly 4 o'clock, the appellee concluded that the appellant did not intend to take the property, and after directing Mr. Rosen to write Mr. Duncan that he would not wait any longer and that the "deal" was off, he and the mortgagee, or the party who was there to release the mortgage, left. Shortly after the appellee left Mr. Rosen's office, Mr. Duncan called up Mr. Rosen, and when Mr. Rosen told him what the appellee had said, he went to see Mr. Rosen and Mr. Rosen showed him a copy of the letter he had just mailed to him in which he stated that it was then 4 o'clock and that Mr. Duncan "neither appeared, 'phoned or sent any explanation of" his failure to appear; that the repeated delays had caused the appellee a great deal of expense in connection with the release of the mortgage then on the property; that a number of appointments for the purpose of putting the deal through had been broken by him, and notifying him, as counsel for the appellant, that the appellee would decline "to put the deal through." Mr. Duncan states that upon being shown a copy

of said letter, he determined not to take any chances with Mr. Cohen, and as he was not well, he called up Edwin T. Dickerson, Esq., and asked him to prepare at once a bill of complaint by the appellant against the appellee for specific performance of the contract of sale. Mr. Dickerson, after talking with the appellant, prepared that night the original bill in this case, and it was filed in Circuit Court No. 2 of Baltimore City the following morning, July 27th, 1921. In that bill, after setting out out the advertisement, the sale of the lots, and extracts from the deeds showing the existence of the alley referred to and the right of certain persons to the use of the same, the appellant alleged:

"3. That relying upon said advertisement and the terms and provisions thereof, and believing said property to be one entire lot of ground, and without any knowledge whatsoever that said property was and is subject to the easement of an alley through the same, your orator purchased said property at said sale at and for the sum of twenty-five thousand, nine hundred dollars ($25,900), upon the terms and conditions in said advertisement set forth, he being then and there and at that price the highest bidder therefor.

"4. That at the time of said sale your orator paid the sum of one thousand dollars ($1,000) on account of the purchase price of said property in accordance with the terms of sale as advertised, as will more fully appear by the receipt of said auctioneer attached hereto marked 'Auctioneer's Receipt,' prayed to be taken and considered as part hereof.

"5. That your orator now is and always has been ready, willing and able to carry out and perform said contract of purchase of said property and the engagements on his part therein contained, and pay the balance of the purchase money as aforesaid, said Jacob Cohen, although requested to do so, has failed, neglected and refused to carry out said contract by executing a deed for said property so purchased as aforesaid to your orator by a good and merchantable title, free of all encumbrances and easements."

The prayers of the bill were (1) that "the sale be specifically enforced." (2) That the appellee be enjoined from selling or disposing of the property. (3) That the auctioneer be enjoined from paying over to the appellee the deposit of $1,000.00, and (4) for general relief. The court below passed the restraining order as prayed, and thereafter the appellee filed his answer, in which, after admitting the sale, &c., he alleged that the advertisement stated that a plat would be exhibited on the day of sale giving "a description of the property"; that the plat, showing the alley complained of in the bill, was exhibited before and at the time of the sale; that the appellant not only saw the plat showing the alley, but that his attention was called to it before the sale was made; that the auctioneer distinctly stated before and at the time of the sale that he was selling the property "as described on said plat," and that after the sale the appellant took possession of the plat and has retained possession of it ever since. The answer also denied that the appellant had always been ready and willing to perform the contract, and that the appellee had refused or neglected to perform the same, and further alleged that neither the appellant "nor any one on his behalf" had ever tendered the appellee a deed, or offered to pay the balance of the purchase-money in accordance with the terms of the sale. The case remained in that condition until a few days before the amended bill was filed, when counsel for the appellant stated to counsel for the appellee that he had "studied" the case and reached the conclusion that there "was nothing in the alley question," and that he was going to amend the bill so as to "eliminate the question of the alley," and on December 6th the amended bill was filed. Counsel for the appellant and appellee have both treated the amended bill as an abandonment of the demand for a conveyance of the property free of the easement of the alley referred to, and in his answer to the amended bill the appellee alleges as follows:

"3. In answer to the fourth paragraph of the plaintiff's bill, this defendant denies that the plaintiff has

always been ready and willing to carry out and perform his contract of purchase of the property in question; that, on the contrary, it was required by the terms of sale that the purchaser make a deposit of one thousand dollars ($1,000), which was done; that seventy-five per cent. (75%) of the purchase price was to remain on mortgage if the purchaser so desired, and that the balance of the purchase money was to be paid within thirty days from the date of sale, to wit, on or before July 7, 1921, and that shortly before said date the plaintiff, through his attorney, demanded as a condition of completing the transaction that this defendant have the property released from the easement of the alleyway hereinbefore mentioned, and the plaintiff wrongfully insisted that he had not been aware of the existence of the alleyway, that he would not take the property subject to the alleyway, and that he demanded that this defendant convey him the property free of said alleyway. That after negotiations between the attorneys for the respective parties, the plaintiff, Charles Raith, adhered to this position, and although the time allowed him to complete the purchase was, by reason of negotiations between the attorneys hereinbefore mentioned, extended from July 7th to July 26th, the plaintiff continued to adhere to the position which he had taken, and the defendant notified him that he would not wait beyond July 26th, 1921, for the consummation of the purchase, and that thereupon the plaintiff filed the original bill of complaint in this case, wherein he insisted and demanded that he was entitled to said property without the alleyway in question, and demanded that the defendant convey the property to him free of the easement of said alleyway, although the plaintiff well knew of said alleyway at the time of his purchase, and the plat showing the same was left in his possession on the day of the sale, and has ever since been in his possession, and although the auctioneer at the time of the said sale not only exhibited said plat, but distinctly referred

to the same and called the attention of bidders thereto. By the amended bill, recently filed in this case, the plaintiff now seeks to change his position, and expresses himself ready and willing to take the property, even subject to the easement of said alleyway, but inasmuch as the time allowed the purchaser for the completion of his purchase expired many months ago and as the purchaser at that time definitely and finally refused to accept said property subject to the easement of said alleyway, it is now too late for him to change his position, and the defendant is advised that the plaintiff has no further rights in the premises. By reason of the position taken by the plaintiff in July, 1921, it became necessary for this defendant to treat the agreement of sale as finally broken, and the property as still his own, and it became necessary for the defendant to deal with said property accordingly, and it would be most inequitable, after a lapse of many months, to permit the plaintiff to change his mind to the damage and injury of this defendant."

Upon the evidence to which we have referred, and further evidence that the appellee's purpose in making the sale was to pay off the overdue mortgage on the property of $10,000, and to raise the amount of money necessary to enable him to take advantage of a business opportunity that had been offered him, and that, by reason of the failure of the appellant to consummate the sale and the filing of the original bill, the appellee not only lost the business opportunity referred to, but was also compelled to pay the mortgagee a bonus of $500 to induce him to carry the mortgage pending the litigation, and to forego a very desirable lease of the property, the court below refused to grant the relief prayed, and the present appeal is from a decree dismissing the bill.

The contentions of the appellant are (1) that he did not refuse to accept the property subject to the easement of the alley, and (2) that the time of payment of the contract price was not of the essence of the agreement, and that even if he

did refuse in July to take the property subject to the ease-
ment mentioned, his offer and willingness to take it subject to
such easement a few days before the filing of the amended bill
on December 6th, and at the time of the trial in the court
below, entitled him to a decree of specific performance.

1.   That the appellant purchased the property with knowl-
edge of the existence of the alley referred to, if not now con-
ceded, is abundantly shown by the evidence, and it is no longer
claimed that he was entitled to a conveyance of the property
free of such easement.   But that the appellant did contend in
July that he did not know of the alley and insist upon a
release of the easement as a condition of consummating the
purchase, is not open to serious question upon the evidence in
the case.   The uncontradicted testimony of Mr. Rosen is that,
in the interview of July 20th between Mr. Duncan, the appel-
lee, and himself, Mr. Duncan stated that the appellant did not
know of the alley at the time of the sale and that he would
not take the property subject to the alley.   When Mr. Rosen
called his attention to the advertisement and to the fact that
the appellant was at the sale and saw the plat, he said he
would talk to the appellant about it again, and in answer to
Mr. Rosen's letter of that date, fixing 2 o'clock P. M. of
July 25th as the time of settlement, Mr. Duncan wrote him on
July 22nd, by registered mail, saying that the appellant would
be ready to settle at the time appointed, but that he would
"like to have the people sign off who have the right to use
the alley" as the appellant "informs me that there was nothing
said at the time of the sale about any one having an easement
against the property or about the alley."   It is true that Mr.
Rosen replied on July 25th that the appellant "knew all about
the alley and the easement therein prior to and at the time of
the sale," and that at the meeting of the parties and their
respective counsel a few hours later nothing was said about the
alley, but it is also true that neither the appellant nor his
counsel said anything to the appellee or his counsel to indicate
that the appellant had receded from his position in regard to

the alley, and that immediately upon the breaking off of nego-
tiations the following day the appellant filed the original bill
in this case, again asserting that he had made the purchase
without any knowledge that the property "was subject to the
easement of an alley," and demanding a conveyance of the
property free of such easement. At the trial of the case on the
amended bill the appellant testified that he went to the meet-
ing of July 25th with the intention of accepting the title sub-
ject to the alley, but such intention was not made known to the
appellee or his counsel, and his testimony is at variance with
his conduct, assertions and demands immediately prior and
subsequent to that meeting.

2. In support of his contention that, notwithstanding his
demand for a conveyance of the property free of the ease-
ment, he was entitled under his amended bill, waiving such
demand, to a decree, the appellant relies upon the case of
*Haffey* v. *Lynch*, 143 N. Y. 241. A glance at that case will
show, however, that the question there decided is very differ-
ent from the one involved in this case. There, at the date of
the contract, the vendor had the title which she contracted to
give, but by reason of subsequent ejectment proceedings she
was unable to convey it at the time the bill for specific per-
formance was filed. Prior to the trial under the bill the
ejectment proceedings were disposed of, and the court held
that the plaintiff was entitled to a decree for a conveyance of
the title which the defendant had contracted, and at the time
of the trial was able to convey. Here the demand of the
appellant was for the conveyance of a title which the appellee,
at the date of the contract, did not have, and did not contract
to give.

The appellant knew of the existence of the alley at the time
he became the purchaser of the property, and his subsequent
persistent demand for nearly five months for a conveyance
of the property free of such easement was tantamount to a
refusal to perform his part of the contract. In the case of
*O'Brien* v. *Pentz*, 48 Md. 562, the Court, speaking of the cir-

cumstances under which a court of equity will decree specific performance of a contract, said, among other things: "The party seeking its execution must, at the same time, be able to show that he has fully, not partially, performed everything to be done on his part," and in the later case of *Penn* v. *McCullough,* 76 Md. 229, JUDGE ROBINSON, quoting the language of Lord Alvenley, M. R., in *Milward* v. *Thanet,* 5 Ves. 720, note b., said: "A party cannot call upon a court of equity for specific performance, unless he has shown himself, ready, desirous, prompt and eager."

But apart from the consideration mentioned, by insisting so long upon a demand he had no right to make, to the great loss and injury of the appellee, the appellant forfeited his right to the relief he now seeks in his amended bill. In the case of *Newman* v. *Johnson,* 108 Md. 367, where the vendee claimed that there was an easement in favor of the Western Maryland Railroad Company in a part of the land the vendor had, on March 13th, 1907, contracted to convey to him, and insisted upon the vendor securing a release of the same before he would comply with the terms of the contract, and where the vendor denied the existence of the easement and refused to secure a release, and, after waiting several months for the vendee to comply with the terms of the sale, sold the property to another party, this Court held that the vendee was not entitled to specific performance of the contract, and JUDGE PEARCE, speaking for the Court, said: "Even if it were conceded that Johnson (the vendee) was in perfect good faith insisting upon his right to demand a release from the railroad, he should have elected either to accept the title without a release, or to cancel the contract upon Newman's refusal to procure a release and enforce whatever rights, if any, he had under those conditions. He could not play fast and loose with the contract, speculating upon the contingency of a resale, instead of complying with his own absolute obligation as to payment. * * * For five months Johnson, according to his contention, was declining to take such title as Newman had,

and then when he finds Newman has a purchaser willing to take that title, asks the court to award it to him. In *Farber* v. *B. Coal Co.,* 216 Pa. St. 209, where the contract was for a fee simple estate, the vendor found he did not have the whole estate. He offered to convey the title he had, but the vendee refused to accept it, and afterwards asked for specific performance, which was refused, the Court saying: 'It would not permit such inconsistent and unconscionable conduct on the part of a litigant, but on the contrary will compel him to act with due regard to the rights of other interested parties.' "

In the case at bar the vendee, as we have said, knew of the alley at the time he entered into the contract, and after persisting for nearly five months in his unjustifiable demand for a release of such easement, to the serious loss of the appellee, a court of equity will not aid him to escape the consequences of his own wrong or default.

*Decree affirmed, with costs.*