360 P.2d 656

Dale J. BELLAMAH, Plaintiff-Appellee,

v.

Jack SCHMIDER and Norma Schmider, his wife, and Walter Schmider, Defendants-Appellants.

No. 6571.

Supreme Court of New Mexico.

March 23, 1961.

Derwood Knight, Adams & Foley, Albuqerque, for appellants.

Owen B. Marron, Albuquerque, for appellee.

PER CURIAM.

Appellee having filed a motion for rehearing the motion was considered and denied. The originally filed opinion has been withdrawn and the following is substituted.

NOBLE, Justice.

This appeal arises out of a contract for the sale of real estate in which there was a partial failure of title and is from a decree ordering specific performance by requiring conveyance of that part of the real estate to which defendants had title and allowing abatement from the purchase price for the portion of the land to which there was a failure of title.

The facts were all stipulated and set forth in a pre-trial order entered by the trial court, and are substantially the following.

Defendants on March 31, 1958, gave plaintiff a written option to purchase approximately 76 acres of land for subdivision purposes for a total expressed consideration of $190,000 of which $19,000 was to be the initial payment. Upon or shortly after acceptance of the option plaintiff tendered the initial payment together with a form of contract of purchase and sale which was refused. Plaintiff thereupon commenced action for specific performance. Thereafter plaintiff prepared and submitted to defendants a second form of contract for the purchase and sale of said land, which was

dated May 23, 1958 but not executed until June 24, 1958. In the meantime and prior to May 23, 1958, abstracts of title were furnished plaintiff and examined by his attorney. By the contract, defendants agreed to sell described tracts containing the approximately 76 acres of land reciting that it might be used for subdivision purposes. The total purchase price was $190,000. Sellers (defendants) agreed to convey the land to a bank, which was to act as trustee or as termed in the agreement "title agent", and the land was to be conveyed to purchaser (plaintiff) by the title agent as provided in the agreement.

The initial payment of $19,000 was to be made upon execution of the contract, and plaintiff was to receive a deed to 10% of the land, to be selected by him, immediately upon such payment. The balance of the purchase price was payable at the rate of $10,000 per year with plaintiff being entitled to a deed to the number of acres represented by each annual payment, based upon its proportion to the total purchase price. In each case the land to be conveyed was to be selected by the plaintiff. The contract further provided, however, that plaintiff could terminate the contract at any time and be under no obligation to make any further payments simply by failing to make any annual payment, but was to retain title to all land for which he had paid.

After the option but before execution of the contract of May 23, 1958, plaintiff was advised that two strips of land, one 59.42 feet in width running approximately through the center of the tract and the other some 50 feet in width along the eastern side were not owned by defendants. One of the tracts was owned by Edward Schmider, father of defendants, and the other by Irvin Nadler. Both strips were designated on a plat as proposed public streets. Plaintiff was further advised at that time that these strips had not been and would not be dedicated as public streets, and that defendants would neither acquire title to nor cause conveyance of the strips to be made to plaintiff.

Plaintiff thereupon, and prior to execution of the contract, through his attorney, negotiated with the owners of the strips and received from them offers in writing to sell the strips to plaintiff for a total price of $17,034. Plaintiff verbally accepted the offers but did not pay the purchase price. He tendered Edward Schmider and Irvin Nadler $17,034 for the strips owned by them but conditioned upon defendants abating or reducing the purchase price under their agreement with plaintiff by that amount with the entire reduction to be taken from the initial payment. Plaintiff then tendered to defendants the sum of $1,966 in full satisfaction of the initial payment for which he was to be conveyed 10% of the land to be selected by him. He did not, at any time, make any payment to defendants. Plaintiff thereafter filed a supplemental complaint

which in substance alleges the above facts, except for the time when plaintiff became aware of the partial failure of title in defendants and their refusal to acquire the part to which they had no title. These facts, however, were stipulated. Plaintiff sought specific performance of the contract and for abatement from the initial payment of $17,034. The contract dated May 23, 1958, but which was executed June 24, 1958, superceded the option agreement and specific performance, if granted, must be of that contract. This appeal results from a decree in specific performance directing defendants to convey all the land, except the strips, and ordering an abatement in the amount of $17,034 from the initial payment, and that plaintiff pay $1,966 in full satisfaction of the initial payment under the contract.

■ In general, a vendee of real estate is entitled to specific performance for that part to which vendor can furnish the agreed title with abatement from the purchase price for that part to which vendor cannot deliver title. Mundy v. Irwin, 20 N.M. 43, 145 P. 1080. However, under the stipulated facts in this case the plaintiff knew before and at the time of execution of the contract that defendants did not own and could not convey title to the two strips and further knew that they would neither acquire title to the strips nor procure dedication of them as public streets.

A different rule prevails where the vendee knew, when the contract was executed, of vendor's inability to convey the whole of the property contracted. Frey on Specific Performance (6th Ed.) § 1271 at 588 says:

"If the purchaser is, from the first, aware of the vendor's incapacity to convey the whole of what he contracts for, he cannot generally insist on having, at an abated price, what the vendor can convey."

The Supreme Court of Nebraska in O'Brien v. Fricke, 148 Neb. 369, 27 N.W. 2d 403, 407, used language applicable to the instant case in saying:

"Related thereto is the rule that if a purchaser is aware of a deficiency in the subject matter at the time of entering into a contract for the purchase of real estate, he will not, in a suit for specific performance, be entitled to any compensation or abatement of price unless equity and good conscience clearly require it. Moore v. Lutjeharms, 91 Neb. 548, 136 N.W. 343."

Further authority for the rule is found in Hughes v. Hadley, 96 N.J.Eq. 467, 126 A. 33 and Wetherby v. Griswold, 75 Or. 468, 147 P. 388.

Thus, the rule is that with certain exceptions, not present under the facts here, a vendee who at the time of the contract knew of vendor's failure of title to a portion of

the land is not entitled, in an action for specific performance, to compensation or abatement of the purchase price. Particularly is the rule denying vendee specific performance and abatement applicable where the vendee not only had actual knowledge of vendor's lack of title to part of the land at the time of the contract but, likewise, had actual knowledge that vendor would not acquire title to the missing part so as to be able to convey it to vendee.

It is especially significant that no provision was made in the contract for any reduction in the purchase price if defendants were unable to convey the whole of the described tract even though all parties knew at the time the contract was executed that defendants not only did not own the two strips but that they would neither acquire the title to them nor secure a dedication of them as public streets.

■ In suits for specific performance courts will not make a new contract for the parties which they did not make for themselves nor enforce conditions upon which they had obviously not had a meeting of the minds. O'Brien v. Fricke, supra; Anderson v. Schertz, 94 Neb. 390, 143 N.W. 238.

■ Under the facts here present, and particularly where the vendee sought and obtained offers from Edward Schmider and Irvin Nadler, owners of the strips, and verbally accepted such offers prior to execution of the contract we can only assume that vendee was satisfied with the stated price for the land to which he knew vendors did have title and made a separate agreement to purchase the strips.

The situation, under those facts, is analogous to one where there is an obvious and visible easement. Where such an easement exists it is held that it gives no ground to the purchaser for compensation therefor by way of abatement in the price and that it gives rise to the presumption that the easement or encumbrance was considered in fixing the price. Wetherby v. Griswold, supra.

We do not mean to say that in a proper case a vendee may not accept the title vendor can convey and have specific performance of as much of the land to which vendor can convey the title agreed upon without abatement.

Simpson v. Stallings, 54 N.M. 352, 225 P.2d 139, relied upon by appellee is clearly distinguishable. The action there was one to rescind a contract and recover the payment made, not one in specific performance. The rule there stated is not applicable to the facts of this case.

Moreover, plaintiff's tender to Edward Schmider and Irvin Nadler was conditioned upon defendants allowing plaintiff to reduce the purchase price for the larger tract by the amount paid for the two strips, all from the initial payment. The tender of the

initial payment to defendants was $1,966 or the amount of the initial payment less the amount for which the owners of the strips had agreed to sell them to plaintiff. The pre-trial order recites:

"16. That after the 23rd day of May 1958, the plaintiff submitted to the defendants a warranty deed to be executed by the defendants along with the owners of the above mentioned strip of land, and defendants refused to execute said deed because the plaintiff claimed the right to abate moneys paid to the owners of the strip, from the initial payment on the purchase price, to be paid for the land owned by defendants under the terms of the contract dated the 23rd day of May 1958."

Dodge v. Galusha, 151 Neb. 753, 39 N.W. 2d 539, 543, quoted with approval the rule on tender from 52 Am.Jur. "Tender" § 24 at 231:

"It is the universal rule that a tender upon conditions for which there is no foundation in the contractual relation between the parties is ineffective, or, as sometimes expressed, a tender must be without conditions to which the creditor can have a valid objection or which will be prejudicial to his rights * * *."

See Nutter v. Occidental Life Ins. Co., 26 N.M. 140, 189 P. 882 and Union Esperanza Mining Co. v. Shandon Mining Co., 18 N.M. 153, 135 P. 78.

The tenders were not in compliance with the agreement, imposed conditions which plaintiff had no right to impose, and cannot be made the basis for specific performance. Raith v. Cohen, 142 Md. 38, 119 A. 700; Rossbach v. Micks, 89 Neb. 821, 132 N.W. 526, 42 L.R.A.,N.S., 444; Joyce v. Dillon Properties, 181 Md. 664, 29 A.2d 273.

In view of what we have said, other questions briefed or presented need not be determined.

The decree of specific performance will be reversed and the cause remanded to the district court with instructions to vacate the decree and enter judgment in accordance with the views expressed herein.

It is so ordered.

CARMODY, CHAVEZ and MOISE, JJ., concur.

COMPTON, C. J., not participating.