In the Matter of the ESTATE of H. H. HAYHURST, Deceased.

Doyle WESTFALL, Plaintiff in Error,

v.

Orley HAYHURST as Administrator with will annexed of the Estate of H. H. Hayhurst, Deceased, et al., Defendants in Error.

No. 42622.

Supreme Court of Oklahoma.

Dec. 8, 1970.

Erwin & Erwin, Chandler, for plaintiff in error.

Streeter Speakman, Sapulpa, John W. Taber, Chandler, Robert W. Blackstock, Harry M. McMillan, Bristow, William A. Vassar, Chandler, for defendants in error.

DAVISON, Justice.

Doyle Westfall appeals on the original record from an adverse judgment rendered in favor of Orley Hayhurst, Administrator with Will Annexed of the Estate of H. H. Hayhurst, Deceased, et al.

This appeal involves two main propositions (1) Did the will of H. H. Hayhurst devise to his widow, Fannie, a fee or a life estate in 240 acres of land? and (2) Was Westfall entitled to specific performance of his contract to purchase the land from Fannie to the extent of the full fee title, or in the alternative for the undivided one-third interest she received when she elected to take under the statutes of inheritance?

The last will and testament of H. H. Hayhurst (dated May 5, 1932) was admitted to probate in the County Court of Creek County, Oklahoma, in November, 1932. Fannie was appointed executrix. The will provided, insofar as pertinent, as follows:

"(2) I give, devise and bequeath, to my beloved wife, Fannie Hayhurst, the following described property, to-wit:

All of the Northwest Quarter of Section 7, Township 16, Range 4 East containing 160 acres more or less.

All of the West one half of the Northeast Quarter, of Section 7, Township 16, Range 4 East, containing 80 acres more or less, the above described real estate located in Lincoln County, Oklahoma.

"All of Lots No. 21–22–23–24–25– and 26, Block No. 52, together with all improvements thereon, in the Town of Depew, Creek County, Oklahoma, as shown by the original plat thereof.

All Money at interest, all money in bank or elsewhere, all my Household goods, all my shares of stock now owned by me—in the Oklahoma Natural Gas Company, and any and all property of every kind and description of which I may die possessed of, She to have and to hold all the above described property during her life time, and at her death, I., give and bequeath all the remainder of the above described property to my sons, namely; Archie Hayhurst and Orley Hayhurst, share and share alike, if both surviving, in case my son Archie Hayhurst should not survive my wife Fannie Hayhust, then I direct the payment of the sum of $25.00 to Annie Hayhurst his wife, and the sum of $25.00 to Archaline Hayhurst his adopted daughter, and any all the remainder to go to my son Orley Hayhurst, if living, and if not living to Sadie Louise Hayhurst his daughter.

(3) In case my wife Fannie Hayhurst should marry again, then all the above described property of every description to be distributed as above described."

Nothing further was done in the probate toward completion of the proceedings until 1965.

On April 25, 1964, Fannie Hayhurst and Westfall entered into a written contract in which Fannie agreed to sell and Westfall agreed to buy the 240 acres in Lincoln County, except one-half of the minerals, for $15,000.00 and the expense of a "title suit." Pursuant to the contract the sum of $1500.00, the contract, and a deed from Fannie to Westfall, were placed in escrow with a local bank. The contract also contained the following provisions:

"That the first party agrees to furnish an abstract of title showing good and marketable title and second party shall have a reasonable time for examination thereof and if defects besides that hereafter mentioned are discovered, then first party shall have a reasonable time to correct such defects.

That it is understood and agreed between the parties that it is necessary that a title suit be brought to establish a fee simple title in first party under the will of her deceased husband, H H Hayhurst, and first party hereby authorizes second party to employ attorneys and to commence and maintain said suit to final judgment but it is understood and agreed that second party will in addition to the consideration above stated pay the costs and attorneys' fees involved in said title suit."

Westfall then instituted an action in the District Court of Lincoln County, styled Fannie Hayhurst v. Archie Hayhurst, et al, to quiet title to the 240 acres, which was in essence an action to construe the will and to determine that the will devised the fee title to Fannie. The District Court held that the will only gave Fannie a life estate in the property. On appeal to this court it was held that the District Court did not have jurisdiction to construe the will, and the judgment was reversed with directions to dismiss the action. Hayhurst v. Hayhurst, Okl., 421 P.2d 257, which became final on December 13, 1966.

In the meantime, in the County Court of Creek County, on August 10, 1965, Fannie was removed as executrix. On November 15, 1965, Fannie filed an election in the County Court of Creek County, in which she renounced her rights under the will and elected to take under the inheritance statutes. Westfall then filed pleadings in the County Court asserting that Fannie's election was contrary to her obligations under the land purchase contract; that by virtue of the contract he was entitled to have distributed to him all of Fannie's interest in the 240 acres, which under the will was the fee title; and that in any event he was entitled to Fannie's inherited one-third interest. The County Court approved Fannie's election, and distributed one-third interest to Fannie, and denied Westfall any relief on the ground that the County Court was without jurisdiction to do so.

Westfall appealed to the District Court and that court concluded the will had only devised a life estate to Fannie; that it had no jurisdiction to enforce the land purchase contract; and affirmed the judgment of the County Court distributing a one-third interest to Fannie.

Westfall contends that the will devised the fee simple title to Fannie and that the subsequent provisions therein were not sufficient to modify this initial devise.

He relies upon our conclusion, and the rules and authorities set forth in Shippy v. Elliott, Okl., 327 P.2d 645, to sustain the above conclusion. In that case the will, without qualification, devised lands to the testator's wife, and then in the last part thereof expressed the testator's "will and desire" that the property remaining at her death should be equally divided among their children. We held that the latter clause did not diminish the fee estate initially given the wife.

In Shippy we said that it is fundamental that in construing a will, the primary objective is to ascertain and give effect to the intention of the testator, and effect should be given to all of the provisions of the will, if possible.

We further said in Shippy that where an estate is given in a will by clear and decisive terms it will not be taken away or cut down by a subsequent clause, unless the subsequent clause is as positive as the words giving the estate.

In the present case the testator devised to Fannie "the following described property, to wit:" and then proceeded in separate paragraphs to list the "following described property," prefacing each paragraph and description of property with the word "All," and then limits the devise by the words, "She to have and to hold *all* the above described property during her life time, and at her death, I., give and bequeath *all* the remainder" to his sons. (Emphasis supplied.) The will then proceeds to enumerate certain contingencies relative to the remainderman and the dis-

position to be made of the property in the event they should occur.

It is our conclusion that the language of the will clearly expresses an intention on the part of the testator to limit Fannie's interest to a life estate. The continued use of the word "all" in referring to the property and the will's positive provisions relative to Fannie having a life estate, and to disposition of the property at the death of Fannie compel this conclusion. The will expresses more than a mere "desire." The language of the subsequent clause limiting the devise to a life estate is as clear and positive as the initial devise.

Contrary to Westfall's contention, the will did not devise the fee to Fannie.

Westfall contends that he is entitled to specific performance of his contract of purchase to the extent of the one-third interest awarded to Fannie and to abatement of two-thirds of the purchase price.

Aside from the question of whether the County Court, or the District Court on appeal, had jurisdiction to grant relief of this nature is a probate matter, the merit of Westfall's contention depends on whether, under the circumstances, he was entitled to specific performance of the contract.

In Bowen v. Freeark, Okl., 370 P. 2d 546, we said that specific performance of a contract is not a matter of right, but a question of equity and the application is addressed to the sound legal discretion of the trial court and controlled by the principles of equity in full consideration of the circumstances in each case.

It is obvious in the present situation that Fannie did not own and could not convey the full fee title to Westfall.

It is a general rule that where the vendor is unable to convey the property which he has agreed to convey because of a defect in the quality or quantity of the estate which he possesses and the vendee has entered into the contract without knowledge or notice of the deficiency or defect in the vendor's title, the vendee may have specific performance of the contract

as to whatever interest the vendor has with such restitution or abatement as to the purchase price as may be determined by the court. 81 C.J.S. Specific Performance § 21b(2) (a), p. 448. See also 49 Am.Jur. Specific Performance, § 105, p. 123; Bellamah v. Schmider, 68 N.M. 247, 360 P.2d 656; Annotation 154 A.L.R. 767, 768; Hart v. Honrud, 131 Mont. 284, 309 P.2d 329, 333.

 There are limitations and qualifications to this general rule granting specific performance with abatement of a portion of the purchase price. Specific performance cannot be invoked by the purchaser who, at the time of making the contract, had notice of the fact that the vendor had a limited interest in the land, or that his title was defective. 49 Am.Jur. Specific Performance, § 106, pp. 125, 126; 81 C.J.S. Specific Performance § 21b(2) (a), p. 450; Bellamah v. Schmider, supra; Caveny v. Asheim, 202 Or. 195, 274 P.2d 281, 293.

Another qualification to such general rule is that specific performance should not be granted where to do so would in effect make a new contract between the parties. 81 C.J.S. Specific Performance § 21b(2) (a) p. 449; Bellamah v. Schmider, supra; Waldeck v. Hedden, 89 Cal.App. 485, 265 P. 340, 342; Merritz v. Circelli, 361 Pa. 239, 64 A.2d 796, 7 A.L. R.2d 1325, 1329.

These qualifications and limitations are clearly applicable to the present land purchase contract. In the contract Westfall recognizes that Fannie did not have a good and merchantable title of record to the 240 acres; that a suit was necessary to establish that Fannie had a fee simple title under the will of her deceased husband; and that Westfall assumed the burden and expense of selecting attorneys and prosecuting a title suit to establish that a fee title was in Fannie. Obviously, Westfall and Fannie believed that the suit would establish fee title in Fannie, and they contracted on this basis. No provision was inserted in the contract regarding their respective rights in the event the suit failed. The ef-

fect of Westfall's contention is to enlarge the contract to require conveyance of a one-third interest with proportionate abatement of the purchase price.

It is our conclusion that Westfall knew of the defect in the title, and of the hazards of establishing a marketable title, and that to grant specific performance as to the one-third interest would in effect make a new contract between the parties. Under all of the circumstances it would not be equitable to grant Westfall's request for specific performance.

The judgment of the trial court is affirmed.

All Justices concur.