GRACE A. MOORE, APPELLEE, V. WILLIAM LUTJEHARMS ET AL., APPELLANTS.

FILED MAY 29, 1912. No. 16,684.

Specific Performance: DEFECT IN TITLE: ABATEMENT OF PRICE. If a purchaser, at the time of entering into a contract for the purchase of real estate, is aware of a defect in the vendor's interest or title, or deficiency in the subject matter, he will not, in a suit for specific performance, be entitled to any compensation or abatement of price, unless equity and good conscience clearly require it.

APPEAL from the district court for Harlan county: HARRY S. DUNGAN, JUDGE. *Affirmed.*

*John Everson*, for appellants.

*Thomas & Shelburn* and *J. G. Thompson, contra.*

FAWCETT, J.

This case is an aftermath of *Lutjeharms v. Smith,* 76 Neb. 260, to which reference is made for a clear statement of the transactions between the defendants in this case, Lutjeharms and Smith. Defendant Smith failed to comply with the decree entered in that case, requiring him to convey the land to Lutjeharms and deliver to him the patents and other title papers in his possession, and has ever since permitted the $3,000 paid into court for his use, by Lutjeharms, to remain in the hands of the clerk. After that case was decided Lutjeharms conveyed to the defendant Goedeken. As shown in *Lutjeharms v. Smith,* Smith only owned an undivided one-half interest in the 80 acres in controversy, the title to the other half being in his sister. Subsequently to the termination of that case the sister died, testate. By her will, which was duly admitted to probate in Illinois and has also been probated in Harlan county, this state, she devised her one-half interest in the land to her daughter, the plaintiff herein, and she brought this suit for partition. In her petition she made Goedeken, the present owner, and Lutjeharms, and her uncle Smith, defendants. The parties all appeared and filed pleadings. Goedeken set up his title under his deed from Lutjeharms. Smith filed an answer and cross-petition in which he claimed that the decree in the former suit had been obtained against him by fraud, and asked that it be opened up and that he be permitted to defend. Lutjeharms set up the contract entered into between himself and Myers as agent for Smith, as shown in *Lutjeharms v. Smith, supra,* and prayed that, if the court awarded partition to plaintiff, it order the money now in the hands of the clerk to be retained by the clerk until the final disposition of the partition suit, and that out of such fund he, Lutjeharms, be compensated for whatever portion of the 80 acres, in the event of partition, or whatever sum of money might be paid to plaintiff in the event of the sale of the land, in

such suit. Goedeken has been in possession, claiming to be the owner, for something over four years. The district court entered a decree sustaining plaintiff's claim as owner of an undivided one-half of the land; found the amount of her half of the rental value, for the time Goedeken had been in possession, to be $100; ordered partition to be made between plaintiff and Goedeken, if the same could be done without prejudice to the interest of the parties, the $100 to be a first lien upon the portion awarded to Goedeken; that, if the land could not be partioned, it be sold and divided between plaintiff and Goedeken, the $100 to be paid to plaintiff out of Goedeken's half of the proceeds arising from the sale; found that defendants Smith and Lutjeharms were not necessary parties to the partition suit and dismissed their cross-petitions. Defendants Lutjeharms and Goedeken appeal.

The question we are called upon to decide is a very simple one. In *Lutjeharms v. Smith* we held: "Where the vendee of real estate is willing to accept the title of the vendor, the courts will not refuse to compel a specific performance of a contract because of a defect in the title." This is well-settled law. It is generally held that, "if the purchaser at the time of entering into the contract was aware of the defect in the vendor's interest or title, or deficiency in the subject matter, he is not, on suing for specific performance, entitled to any compensation or abatement of price." 36 Cyc. 742. While this rule, like all others, doubtless has its exceptions, it certainly ought to be applied in a case like the one at bar, where the record shows that defendants are not in a position to insist upon any refinement of equity in their behalf. The purchase by Lutjeharms from Smith was made through one O. H. Myers, a real estate agent of Alma, and the record shows that he and Lutjeharms knew the extent of Smith's title when the contract was entered into. With that knowledge Lutjeharms deliberately decided to make the purchase and take his chances on getting title to the entire tract.

Myers, who now resides in Denver, was called by defendant Smith as a witness. He testified that at the time of his negotiations with Smith he and his partner, F. E. Herron, had an agreement with Lutjeharms that "we were to buy the land as cheap as possible, or rather sell it to him as cheap as possible; then have the privilege of reselling it and dividing the profits;" that Lutjeharms was to furnish the money and title was to be taken in his name. He also testified: "Q. I will ask you if Mr. Lutjeharms knew of the condition of the title of the south half of the southwest quarter of section 25? A. Yes, because we looked that up before we did any writing, and it shows on the plat and record that it does not belong to Mr. Smith. Q. What did Mr. Lutjeharms say relative to the title of that eighty prior to the time that he purchased it? A. Well, he thought that Smith could get his sister to sign the deed. Q. What did he say as to the title of that land? A. He said he would buy the whole thing and take the chances, because if he bought the 240 alone the price was a little bit higher; he was getting the eighty for, I believe, $500, and he knew he could sell it for more money, or that we could. * * * Q. Mr. Myers, did you ever have any conversation with William Lutjeharms about transferring the south half of the southwest quarter of section 25 to William Goedeken? A. Yes. Q. State when and where that conversation was had, and what was said by Mr. Lutjeharms relative to transferring said land to William Goedeken. A. It was in our office, at the time of the making of the pretended sale; and, as he had sold the 80 for about twice what it cost him, I asked him about the division of the profits. He told me that he had to get the land out of his hands, out of his name, and his uncle understood how the title was—he could not furnish a good abstract and had to be responsible for the title, and probably would have to take it back. Consequently, Myers and Herron would have to wait until he knew where he was at himself. Q. What relation is Mr. Goedeken to the said Lutjeharms, if you know? A. He is Lutjeharms' uncle."

Lutjeharms himself testified in relation to this eighty as follows: "Q. When you were proposing to purchase it, what papers or records did you examine to find out where the title was? A. Myers examined it, I think. He said that one eighty was in the title of Mills. * * * Q. When did you look up the title? A. It was after we heard from Mr. Smith that we looked up the title. Q. Then you bought it the same day that Myers received that letter, without looking at the land? A. We had received a letter and knew that the land was for sale. Q. And you bought the land on that same day? A. After we got the letter? Q. Yes. A. I think so; he went up and looked at it first and explained how it was. Q. That was before you got the contract that he explained how it was? A. Myers? Q. Yes. A. Yes, sir."

This testimony shows beyond question that Lutjeharms and Myers knew all about Smith's interest in this eighty at the time they entered into the contract which they claim was based upon Smith's letter of September 3, 1903. This being true, Lutjeharms obtained in *Lutjeharms v. Smith, supra,* everything he was entitled to. He made his contract with Smith, knowing that Smith was unable to convey more than an undivided half interest in this eighty. He brought his suit for specific performance with that knowledge. He obtained a decree compelling Smith to convey the title he had. With his previous knowledge, he could not have obtained in that case, had he asked it, and cannot obtain in this, any abatement in the price which he agreed to pay and which in that case he has compelled Smith to accept.

Finding no error in the judgment of the district court, it is

AFFIRMED.