NORMAN EGLE AND LINDA EGLE, APPELLANTS, V. JOHN JUNIOR KITT AND MARGIE E. KITT, APPELLEES.

277 N. W. 2d 87

Filed March 27, 1979. No. 41926.

736

Padley & Dudden, P.C., and Thomas J. Holmes, for appellants.

C. Kenneth Spady of McGinley, Lane, Mueller, Shanahan & McQuillan, for appellees.

Heard before BOSLAUGH, CLINTON, and WHITE, JJ., and RIST and WINDRUM, District Judges.

RIST, District Judge.
This is an action for specific performance of an option contract for the purchase of real estate brought by plaintiffs, Norman and Linda Egle, against defendants, John and Margie Kitt, wherein plaintiffs are purchasers and defendants are sellers.

The evidence reflects without significant dispute that in 1968, plaintiffs leased approximately 2,010.41 acres of farm and grazing land from defendants for 5 years upon a cash-rent basis. This lease was renewed January 1, 1973, for an additional term of 5 years. On August 10, 1973, the parties entered into a written agreement giving plaintiffs the option to purchase the land from defendants for $185,000, to be paid in the manner specified in the option contract, the option period being the term of the renewed lease. Said option provided that if it were exercised by plaintiffs, the defendants would execute and deliver to plaintiffs, "a good and sufficient warranty deed," conveying the land to plaintiffs. In 1975, oil exploration was conducted upon the land and its value rose substantially. Defendants then told plaintiffs they intended to retain the mineral rights to the land, and later told plaintiffs that defendants' children, all of whom were of full age and who owned an undivided three-fifths interest in the land, would

not convey, and that defendants considered the option valueless. Plaintiffs then commenced this action for specific performance and tendered the downpayment required by the option into court. Neither the renewed lease nor the option agreement were terminated by the parties.

Plaintiffs' amended petition alleged in substance the facts concerning the leases, the execution of the option contract, the ownership by defendants of only an undivided two-fifths interest in the land, and defendants' refusal to carry out the option contract. Plaintiffs prayed for specific performance with damages to the extent of the interest which defendants could not convey.

Defendants, by answer, admitted the leases and generally denied the other allegations of the amended petition.

On trial, the attorney for defendants who had prepared the option contract, testified that on August 10, 1973, the option was being prepared in his office with the parties present, and he then told both parties that defendants were not the owners of all the land and did not have the power to sell it; that plaintiff, Norman Egle, then said he was aware of this but needed the option for the purpose of a loan application. The attorney testified he then prepared the option contract because the defendant, John Kitt, directed it be done.

The defendant, John Kitt, testified that at the time of this conversation, the plaintiff, Norman Egle, said he needed the option so he could get a loan to purchase the land. John Kitt also admitted that at the time the option was signed it was his intent to sell the land to plaintiffs but he was no longer willing to do so.

The plaintiff, Norman Egle, was never asked if the above conversation occurred on August 10, 1973, and made no denial of it. He did testify that when the option was signed by the parties on that date he

thought he had an agreement to buy the entire interest in the land.

The trial court entered its judgment granting plaintiffs specific performance with respect to the two-fifths interest owned by defendants, directing the latter to convey the same to plaintiffs for two-fifths of the purchase price set forth in the option contract and abated the remaining three-fifths of that price.

Defendants filed their motion for new trial alleging the judgment was contrary to the law and the evidence. The trial court sustained the motion and ordered a new trial, specifically finding: (1) A purchaser is not entitled to abatement of purchase price if aware of the deficiency in title prior to entering into the contract, and (2) the testimony reflected plaintiffs were advised of defendants' lack of title prior to signing the option contract, with no denial thereof by plaintiffs.

From this action of the trial court the plaintiffs have appealed, assigning as error the trial court's determination that abatement should be denied where the vendee has knowledge of the title deficiency at the time of contracting and that lack of such knowledge by plaintiffs was an affirmative defense never pleaded by defendants and hence not properly before the court.

We deal with the last assignment first. It is not well stated in the briefs, but plaintiffs' position is that defendants must allege and prove plaintiffs' knowledge of title deficiency if it is to be considered. The pleadings do not raise this issue but we note the pretrial order outlining the issues to be tried included the following: "The court may consider any issues made up by the pleadings and the evidence, and is not restricted to the consideration of these issues (issues specifically noted in the pretrial order)." This order was unmodified and governed the subsequent course of the action. O'Shea v.

O'Shea, 191 Neb. 217, 214 N. W. 2d 486. It is sufficient to encompass the court's consideration of the issues of title deficiency and plaintiffs' knowledge of the same as reflected in the evidence.

There is no question but what defendants only owned an undivided two-fifths interest in the land. Neither party contends otherwise. We also believe the trial court was correct in determining the evidence showed plaintiffs had knowledge of such title deficiency prior to signing the option contract. We proceed further on that basis.

The question to be considered first is whether the trial court correctly stated the rule of law in its order sustaining the motion for new trial, namely, that knowledge by vendees of vendors' title deficiency prior to the execution of the contract, bars abatement of purchase price in an action for partial specific performance.

The rule as fully set out in the case relied upon by the trial court, Moore v. Lutjeharms, 91 Neb. 548, 136 N. W. 343, is: "If a purchaser, at the time of entering into a contract for the purchase of real estate, is aware of a defect in the vendor's interest or title, or deficiency in the subject matter, he will not, in a suit for specific performance, be entitled to any compensation or abatement of price, *unless equity and good conscience clearly require it.*" (Emphasis supplied.) See, also, O'Brien v. Fricke, 148 Neb. 369, 27 N. W. 2d 403. The rule, therefore, is not as absolute as indicated in the trial court's order.

This court has not had occasion to delineate criteria or circumstances when equity would not apply the rule denying abatement, although there is dicta in the case of Smith v. Hornkohl, 166 Neb. 702, 90 N. W. 2d 347, discussing some considerations in this regard. Other jurisdictions have considered the question of when prior knowledge ought not bar abatement and are found and discussed in detail in Annotations, 154 A.L.R. 767. See, also, 71 Am. Jur. 2d,

Specific Performance, §§ 131, 175, pp. 168, 223. An annotation of a purchaser's right to partial specific performance is found in Annotations, 148 A.L.R. 563.

We conclude from an examination of these authorities that in an action by a purchaser for partial specific performance of a land contract, abatement of purchase price should be granted even though at the time of contracting the purchaser had knowledge of seller's title deficiency, when (1) the seller contracted to sell the entire interest in the land, and (2) the purchaser had reasonable grounds to believe the seller could fulfill the contract.

Applying this rule to the case before us we note it was clearly the intention of both parties that the option agreement, at the time of its execution, cover the entire interest in the land; that plaintiffs, as lessees, had dealt with defendants, as lessors, for the entire interest in the land for over 5 years before the option contract was executed, and continued to do so until defendants, finding that oil exploration had caused a significant increase in value, sought to avoid the obligation by first stating they wished to reserve the mineral rights, then advising that their children would not convey, and finally, indicating they considered the option unenforceable. The fact that defendants were parents of the other owners and had dealt with plaintiffs on the basis of the entire interest in the land over such a period of time would, under the circumstances shown here, afford a reasonable basis for plaintiffs to believe, at the time the option was executed, the defendants were in a position to carry out the contract according to its terms. It is clear this is what plaintiffs expected and equally clear what defendants intended to do until subsequent events changed their minds. We find no evidence in the record that plaintiffs had any reason to believe defendants could not or would not carry out the contract until long after its execution.

It would, therefore, be inequitable to deny partial

specific performance to plaintiffs with respect to the interest owned by the defendants and abating the purchase price proportionately for that which they do not own and cannot now convey. The trial court's original judgment was correct.

We therefore reverse the action of the trial court sustaining defendants' motion for new trial and direct that the court's original judgment be reinstated with appropriate modification of the time period for carrying out the same following receipt of the mandate of this court.

REVERSED WITH DIRECTIONS.