LOUISE C. KEMP, Plaintiff-Appellant, v. ZADA KEMP WOODS ET AL., Defendants-Appellants, No. 42582—251 S. W. (2d) 684.

Division One, September 8, 1952.
Rehearing Denied, October 13, 1952.

*George C. Mackay* for Louise C. Kemp, plaintiff-appellant.

*Jacob M. Lashly, John H. Lashly* and *Paul B. Rava* for Żada Kemp Woods et al., defendants-appellants; *Lashly, Lashly & Miller* of counsel.

430

DALTON, J.—Action in equity to set aside and cancel certain deeds to described real estate in the city of St. Louis, establish title in plaintiff by reconveyance or decree, obtain an accounting of rents received, secure the appointment of a receiver, cancel a lease to a portion of the described real estate and for other equitable relief. Since all parties have appealed from the judgment entered below, we shall refer to them as plaintiff and defendants.

Plaintiff is the widow of Dr. Thomas J. Kemp, who died January 23, 1947 at the age of 71 years. He had no children. The defendants include his devisees and legatees (18 nieces and nephews), two trustees under his will and the lessee in the lease executed by him in his lifetime.

On July 10, 1946, plaintiff was the record owner of two tracts of real estate in the city of St. Louis, one tract located at 8612 Halls Ferry Road was improved with a 40-family apartment building, known as the Riverview Apartments, the other tract located at 4501 to 4511 Washington boulevard was improved with a 27-family apartment building and five stores, and was known as the Dundas Apartments. There is a count in the petition for each tract, but both counts attack the same deeds. Plaintiff acquired the record title to the first tract on January 20, 1938, and to the second tract on December 20, 1937.

On July 10, 1946, plaintiff and her husband quit claimed both pieces of property to one Lyle Smith, who as a conduit of title immediately conveyed the property to plaintiff's husband. On the same date plaintiff and her husband entered into a written contract wherein it was recited that contemporaneously with the execution of the contract plaintiff had agreed to and did quit claim all of her right, title and interest in the described property to her husband. The contract further provided for reciprocal wills, the will of Dr. Kemp to give a life estate to his wife in all of his property with

remainder to his nieces and nephews and the will of plaintiff to give all of her real estate in fee simple ·to her husband, if he survived her, or to his nieces and nephews living at the time of her death. The agreement recited that the reciprocal wills were executed contemporaneously with the execution of the contract and wills were in fact executed on that date.

On August 1, 1946, Dr. Thomas J. Kemp executed a five year lease to Hazel N. Robson for a business place on the basement floor of the Dundas. Apartments at a rental of $95 per month with a provision for renewal for five years.

On October 22, 1946, Dr. Kemp executed a new and different will making different provisions for the plaintiff, in the event she survived him, and providing for a trust estate. ·The will materially diminished plaintiff's rights as compared with the contract and prior will. On January 27, 1947, after Dr. Kemp's death on January 23, his will of October 22, 1946 was lodged with the probate court of the city of St. Louis and, on February 7, 1947, plaintiff joined in an application for letters testamentary under said will and signed and swore to the formal application for appointment as coexecutrix. The will of October 22, 1946 was duly admitted to probate on February 7, 1947 and on February 13, 1947 letters testamentary were duly executed to plaintiff and Irene L. Dulin as coexecutrices. . Thereafter, on February 14, ·1947, plaintiff filed her renunciation of the provisions of her husband's said will of October 22, 1946 and elected to take one-half of the real estate and personal property of her deceased husband under the provisions of Sec. 325 RS 1939, now Sec. 469.090 RSMo 1949.

After plaintiff was appointed coexecutrix she proceeded with the administration of the estate of her deceased husband in the regular course in the probate court in the city of St. Louis. She also acknowledged the receipt of one-half the commissions under the semi-annual settlement filed on November 18, 1947. The present suit was instituted [686] on April 9, 1948 and thereafter on May 7, 1948 plaintiff was removed as such coexecutrix.

In her petition in this case plaintiff alleged that her husband was her trusted financial and business agent and that he fraudulently took advantage of her "by. inducing her to sign said contract by mistake and to convey her said property to him under a misapprehension and ignorance of the facts and circumstances." Fraud was also charged on the theory that her husband falsely and fraudulently represented to her that his will, as executed on July 10, 1946, would remain his last will and testament and would not be revoked by him before his death; and that plaintiff relied upon the representation and said representation was only a subterfuge and device to obtain title to her property. Duress was alleged in that, while Dr. Kemp was ill and suffering from a serious heart condition, he told plain-

tiff that "unless she did as she was ordered by him that great bodily harm would result to her and to him." She alleged that in executing the deed she acted under duress, mistake and misapprehension. Plaintiff also pleaded a total lack of consideration for the conveyance and that the consideration contemplated in said transaction had wholly failed. She alleged that she did not discover that a fraud had been perpetrated upon her until after the probate of decedent's will of October 22, 1946; and that she had renounced the will and had demanded that defendants reconvey said premises to her. In their answer defendants alleged that at all times mentioned in plaintiff's petition Dr. Kemp was the sole owner of the described real estate and that plaintiff was holding title for him, as his straw party, until title was conveyed to him; and that plaintiff by qualifying as co-executrix under his last will and testament and by taking the oath to faithfully execute his said will and to administer upon his estate affirmed the will and was estopped to maintain the action.

The trial court construed plaintiff's petition as being one to rescind the agreement, cancel the deeds and reinvest title in plaintiff and stated that such was the primary objective of plaintiff's action, but the court found that the evidence was insufficient to warrant the cancellation of the deeds, found that the consideration was adequate and denied cancellation. However, the court decreed specific performance of the contract as entered into on July 10, 1946 between the plaintiff and her said husband, and the court fixed and determined plaintiff's rights in and to the described real estate in accordance with the provisions of the will of her said husband as executed in her favor on July 10, 1946 contemporaneously with the execution of the said deeds and the said contract for reciprocal wills. The court also cancelled the lease to Mrs. Robson on the ground that it was testamentary in character and had been taken with knowledge of plaintiff's rights. As stated, both plaintiff and defendants have appealed from the judgment entered in the cause. Plaintiff assigns error on the court's failure to enter a decree cancelling the deeds and granting the specific relief prayed for in her petition. Defendants assign error on the court's action in granting relief to plaintiff by fixing her rights in the real estate in accordance with the terms of the will of her husband of July 10, 1946 and in cancelling the lease of August 1, 1946.

We first consider the assignments directed to the judgment as entered. Plaintiff, as appellant, complains that "the decree upholds and validates the contract, the deed and two wills"; that "if the decree stands, the husband has succeeded in the fraudulent scheme"; that she "now finds herself bound by the contract to dispose of her property under the will that she executed in favor of the defendant legatees, not only as to her marital rights in the two parcels of real

estate which she deeded to the Doctor, but also as to all property which had come to her as a tenant by the entirety and also as to any real estate which she has inherited from her father in Florida." She insists that this court should enter its decree cancelling the deeds, "the contract under which she transferred her property and her will executed at the time the contract was signed."

In her motion filed in the trial court to modify the decree, plaintiff charged that "the decree is erroneous in holding that the contract, deeds and wills by plaintiff and [687] her deceased husband are binding and effective on plaintiff." Plaintiff further prayed the court to strike out the provisions of the decree holding that "plaintiff is entitled to have the contract of decedent, Dr. Kemp, and all provisions of his July 10, 1946 will which pertain to the plaintiff, specifically performed and carried into execution."

In her reply brief in this court, while still complaining of the court's failure to decree cancellation and rescission, the plaintiff contends that "the relief granted by way of specific performance follows legitimately and logically both the pleadings and the proof." Plaintiff relies upon the rule "that equity·having acquired jurisdiction will retain it under prayer for general relief to administer full and complete justice within the scope of pleadings and evidence set forth in the case of Rains v. Moulder, 338 Mo. 275, 90 S.W. (2d) 81." Plaintiff further insists that "the decree of specific performance is inadequate under the facts developed," but that "the relief granted was within the scope of the pleadings and the proof."

Defendants, as appellants, contend that the court erred in granting relief to plaintiff "which is relief diametrically contrary to the issue presented and as to which defendants had no opportunity to plead." They contend that "the issue of specific performance of the contract or will of July 10 was not tendered in the pleadings and was not tried by the parties"; and that the plaintiff's "prayer for general relief does not warrant the granting of specific performance of the contract which is the converse of the relief of cancellation and rescission of the deeds specifically prayed for in the petition."

The learned trial chancellor proceeded on the theory, that in view of the facts pleaded and in evidence and the prayer for general relief, he could decree specific enforcement of the contract and fix plaintiff's rights in accordance with the specific provisions of Dr. Kemp's will of July 10, 1946, although the provisions of the will were more favorable to plaintiff than the provisions expressed in the contract for reciprocal wills. While the trial chancellor regarded "the issue of specific performance as having been one of those which was actually tried by the parties," the record presented for review does not sustain that view. There is no suggestion in the record that plaintiff either sought or wanted relief based upon the theory that the contract was valid and enforceable.

■ Plaintiff's action to cancel the deeds for fraud, mistake, duress and lack and failure of consideration and to restore title to the plaintiff was clearly based upon a rescission and disaffirmance of the contract under which plaintiff alleged that the deeds were made. The breach of contract by Dr. Kemp in subsequently making another and different will was directly connected with plaintiff's disaffirmance of the contract and her effort to recover the real estate she had conveyed. She alleged that by said breach of contract the consideration for the conveyance had wholly failed. The alleged breach of the contract was relied upon to show the false and fraudulent intention of Dr. Kemp not to perform the contract at the time he entered into it. The relief of specific performance, as granted by the trial court, was necessarily based upon the theory of a valid binding and subsisting contract, which plaintiff was entitled to enforce. Such theory was directly repugnant to and inconsistent with the theory of plaintiff's petition and the evidence offered thereunder that the contract was fraudulent and void and that plaintiff had elected to disaffirm it and recover her real estate. A plaintiff cannot ratify and affirm a contract and disaffirm it at the same time and in the same count of the petition. He cannot seek relief on the ground that the contract is fraudulent and void and in the trial of the cause obtain specific enforcement on the ground that it is valid. Branner v. Klaber, 330 Mo. 306, 49 S.W. (2d) 169, 180(1); Barlow v. Scott (Mo. Sup.), 85 S.W. (2d) 504, 517(7-9); Nanson v. Jacob, 93 Mo. 331, 344, 6 S.W. 246; Walker v. Charlot, 197 Mo. App. 536, 196 S.W. 1085, 1088; State ex rel. Koontz v. Wells, 240 Mo. App. 457, 210 S.W. (2d) 387, 392(6); 28 C.J.S. 1070, Election of Remedies, Sec. 6; 18 Am. Jur. 135, Election of Remedies, Sec. 12. Defendants were not called upon to plead to or to defend an action based upon a demand [688] for the specific performance of a valid subsisting contract. Barlow v. Scott, supra, 85 S.W. (2d) 504, 517. The powers of a court of equity are limited to the cause of action and issues made by the pleadings. Branner v. Klaber, supra. And, in determining the cause of action intended to be pleaded under the new code, we may consider the facts pleaded and relief sought. Foster v. Pettijohn, 358 Mo. 84, 213 S.W. (2d) 487, 488; St. Louis 221 Club v. Melbourne Hotel Corp. (Mo. App.), 227 S.W. (2d) 764, 770. Under a general prayer for relief, an equity court may not grant relief inconsistent with the pleadings and trial theory and repugnant to the specific prayers for relief. Newham v. Kenton, 79 Mo. 382, 385; Annotation 30 A. L. R. 1170. And see Wall v. Zynda, 283 Mich. 260, 278 N.W. 66; Bleck v. East Boston Co., 302 Mass. 127, 18 N.E. (2d) 536, 538; Parry v. Parry, 316 Mass. 692, 56 N.E. (2d) 875, 879; Roberts v. Houston Motor Car Co. (Ct. Civ. App. Texas), 188 S.W. 257; Crawford v. Stevens (Ct. Civ. App. Texas), 31 S.W. 79, 80; Baldwin v. Brown, 166 Ark. 1, 265 S.W. 976, 978. There was no prayer for inconsistent relief in the alternative. Sec. 509.050 RSMo

1949. A plaintiff may not sue upon one cause of action and recover upon another, or recover upon an inconsistent theory without notice to the opposing party. Newham v. Kenton, supra; Gash v. Mansfield (Mo. App.), 28 S.W. (2d) 127, 131. The relief granted plaintiff on both counts of her petition must be set aside and the cause considered on its merits.

On the merits of the cause the record is quite voluminous and consists of much oral testimony and documentary evidence. Plaintiff offered in evidence her title deeds and other documentary evidence directly connected with her acquisition of the two properties and the execution of purchase money mortgages, the liquidation of these mortgages out of earnings and otherwise, the bank accounts covering the collection and disbursement of rents, the income tax returns and much other evidence. The Riverview property was obtained in exchange for property in Washington, D. C., the record title to which stood in plaintiff's name. There was also testimony that the proceeds of one of plaintiff's checks was used to complete the top floor of one of the apartments, and that her income tax return showed that this amount of new capital was invested. Defendants' evidence indicated that the check represented the proceeds of entirety property.

All matters connected with the record ownership of the two properties was handled in plaintiff's name and this evidence was offered by plaintiff as tending to show plaintiff's beneficial ownership of the property. The rent accounts of the properties were handled in the name of the Riverview Realty Company and the Dundas Realty Company, respectively, both were trade names. The accounts were subject to check by both plaintiff and her husband. They were personal accounts and were used to handle all financial matters in connection with the properties, particularly by Dr. Kemp, who at all times handled all business and financial matters connected with the properties. The accounts were used indiscriminately to liquidate mortgages on the respective properties, and to purchase bonds or pay on other property held by the entirety. Dr. Kemp's office rent in one of the properties was paid into the rent account of that particular building and for which rent he claimed deductions in his income tax returns. The plaintiff never exercised her authority to draw checks upon either of those accounts, but Dr. Kemp drew checks in favor of plaintiff each month for her personal use. During the period from 1938 to 1947, a total of $15,400 was paid to plaintiff from the Riverview account and $11,655 from the Dundas account.

Regardless of who may have been the true beneficial owner of the two properties, it is clear that Dr. Kemp handled all matters of administration, maintenance, collection of rents, leases and financial matters, with the aid of one Doyle, who was superintendent and maintenance man in looking after the properties. There was no change in handling the financial affairs of the respective properties, either in the

method of collecting rents, or in the handling of accounts or in the payments to plaintiff after the record title to the property was transferred [689] from plaintiff to her husband on July 10, 1946.

In 1938 the income from both properties was reported in the joint income tax return of plaintiff and her husband, but in the returns for 1939 and to and including 1946, the income from the Dundas property was reported as Dr. Kemp's income and the income from the Riverview property as plaintiff's property. This was done in separate income tax returns and upon instruction from Dr. Kemp to a tax agent. Dr. Kemp, prior to 1944, advised the agent that the Riverview property belonged to plaintiff. The agent did not deal with Mrs. Kemp. Dr. Kemp signed the returns for himself and for plaintiff. The parties also owned two pieces of real estate as tenants by the entirety. Income from both of the respective properties in question here was to some extent applied for the benefit of either or both properties, and for other purposes. Income from both properties was also used to purchase $10,000 worth of bonds, which were inventoried as Dr. Kemp's personal property.

While wholly omitted from plaintiff appellant's highly argumentative statement of facts, the defendants offered much evidence tending to show that Dr. Kemp was at all times the beneficial owner of both of the described properties and that plaintiff was only a straw party holding the record title for Dr. Kemp's benefit. The evidence shows that Dr. Kemp frequently had the record title to real estate beneficially owned by him placed in the name of straw parties, both in Washington, D. C. and in St. Louis, and that he used this device to protect himself against damage suits. The evidence further tended to show that the real estate in Washington, D. C., which was exchanged for the Riverview property, was beneficially owned by Dr. Kemp; that title to that property had been held for him in various names; and that at the time of the exchange of properties the title was held for him in the name of the plaintiff.

The deed for the Dundas property to plaintiff was dated December 20, 1937, and defendants' evidence tended to show that Dr. Kemp liquidated practically everything he had in his account with the brokerage firm of Reinholdt and Gardner, both securities and cash, in November 1937 and that on November 24 and 27, 1937 said firm issued checks to Dr. Kemp for a total of $4733.60. Dr. Kemp at that time told a salesman for the brokerage firm that he had purchased this property and needed the money. The checks issued to Dr. Kemp were endorsed to the Land Title and Insurance Company of St. Louis. The purchase of the Dundas property was closed through an escrow agreement with the Land Title and Insurance Company of St. Louis under date of January 5, 1938. The check of the brokerage firm to Dr. Kemp was cleared January 4, 1938. A $5000 check drawn on the Tower Grove Bank and Trust Company from plaintiff to her husband dated

December 13, 1937, was also endorsed to the Land Title and Insurance Company and was cleared January 5, 1938. It was admitted at the trial that the liquidation of the mortgages on the Riverview and Dundas properties "was made out of the combination of three sources, that is, from rents of one piece of property and rents from the other piece of property, and Dr. Kemp."

In 1945 Dr. Kemp and others filed a suit in the city of St. Louis involving certain restrictive covenants which also affected the Dundas property. Since the record title to the Dundas property stood in Mrs. Kemp's name, the defendants' attorney took her deposition in that case on July 11, 1945, and she testified that title was in her name, but Dr. Kemp owned the property; that he paid for it; that she signed purchase money notes, but had nothing to do with paying them off; that title was put in her name, but it was his property. The deposition was admitted in evidence without objection. In the trial of that cause on March 11, 1946, Mrs. Kemp testified that she put up no consideration for the property; that she had no financial interest in it; that she was a straw party for her husband; and that she only took title at the request of her husband. Prior to the taking of said deposition and the trial of the cause she had told the attorneys for the plaintiffs in that case that [690] the property belonged to her husband. Dr. Kemp was also quoted as saying that he put the title in his wife's name for convenience.

Prior to the preparation and signing of the contract of July 10, 1946, the same attorneys discussed the question of the beneficial ownership of both of the properties in question with Mrs. Kemp and, thereafter, the contract was drawn in accordance with her statements and she signed it.

The contract recited: "Whereas the parties hereto are husband and wife, and whereas heretofore the first party had placed in the second party's name title to the following described real estate situated in the City of St. Louis, State of Missouri, to-wit:" (legal description of the two tracts of real estate involved here) "and the entire purchase price for each of said pieces of property was paid by the first party without any financial contribution whatsoever by the second party, and whereas the second party now does and has always admitted that the aforesaid conveyances were not gifts by the first party to the second party but were for the purpose of expediency and convenience for said first party, and whereas the second party has at all times agreed to convey the title to the aforesaid pieces of real estate to the first party upon his request for her so to do, and whereas it is the desire now of each of the parties hereto that wills be made by each of the parties hereto, now therefore, it is agreed as follows: 1. Contemporaneously with the execution of this instrument, the second party agrees to convey and does convey to the first party by quit-claim

deed all her right, title and interest in and to the two pieces of property heretofore mentioned.  \*  \*  \*."

The immediate circumstances leading up to the transfer of record title to Dr. Kemp were that in June 1946, the Ace Cab Company wanted to rent space in the basement of the Dundas Apartments and install a switchboard, but plaintiff notified the telephone company not to install the switchboard. The matter was reported to Dr. Kemp, who was in the Park Lane Hospital with a broken arm. He said he would take the property out of her name and let the switchboard go in any way. He was much agitated and called his attorney and told him to have the title to both the Dundas and Riverview properties conveyed to him or to his straw. He wanted to control the matter himself. Thereafter, the deeds and contract in question were drawn and signed on July 10, 1946. Thereafter, the telephone company installed the switchboard for the Ace Cab Company.

The trial court did not rule the issue as to the beneficial ownership of the property. The decree states: "The Court cannot find that the agreement to make the will in plaintiff's favor was the sole consideration for the contract. There was substantial evidence that plaintiff in making her deed to the two parcels of real estate was merely performing or making good a pre-existing obligation to convey the properties to her husband as his 'straw party' holding legal title. There was evidence of her own admission of her husband's ownership while a sworn witness in a deposition and in open court: This, however, in a case involving only the Washington Avenue property (Dundas property). By reason of death further testimony on this 'straw party' issue could not be heard." The trial court, however, expressly found that the evidence was insufficient to justify cancellation on the ground of fraud, duress, mistake or lack or failure of consideration. The court expressly denied rescission and cancellation because of plaintiff's failure to sustain her burden of proof. The court also assigned "the impossibility of restoring the parties to their status quo ante" as a ground for denying rescission.

Plaintiff's contention of want of consideration and failure of consideration for her deed conveying the two properties was based upon her theory that both properties were beneficially owned by her and that she received no consideration for the transfer of title, except the agreement for reciprocal wills; and that, since her husband had revoked his will and executed another will, limiting to some extent the provisions previously made for her, there was a total failure of consideration. As stated, the trial court found both issues against the plaintiff and found that the contract "was binding and irrevocable and subject to specific performance," **[691]** and entered a decree fixing plaintiff's property rights in the two tracts in accordance with the provisions of Dr. Kemp's will of July 10, 1946.

It will not be necessary to here review the evidence offered with reference to the alleged fraud, duress or abuse of confidential relationship. No substantial evidence was offered on these issues and the cause turns upon the true beneficial ownership of the described real estate prior to the execution of the agreement for reciprocal wills. Plaintiff relies upon her record ownership, her execution of purchase money mortgages and notes, the lapse of time during which she held the record title, the regular payments made to her by her husband from the two bank accounts, the husband's payment of office rent into one of these accounts, the return of income from the Riverview property in plaintiff's name, the alleged use of plaintiff's funds for improvement of the Riverview property, the plaintiff's notice to the telephone company not to install the switchboard and the method *by which Dr. Kemp obtained record title, to wit, the agreement for reciprocal wills. We think the record is wholly insufficient to justify a finding that plaintiff was the beneficial owner of the described properties on the date that she transferred the record title to Dr. Kemp. Upon a consideration of the whole record we hold that Dr. Kemp was the beneficial owner of the two properties and that plaintiff held the record title for his benefit. Plaintiff failed to sustain her burden of proof as to the beneficial ownership of the properties and she is not entitled to a decree cancelling the deeds or to a restoration of title.

In the second count of her petition wherein plaintiff asked cancellation of her deed to Dr. Kemp (which deed conveyed both the Riverview and Dundas properties) she also sought to cancel Dr. Kemp's lease to defendant Robson, dated August 1, 1946, for part of the basement of the Dundas Apartments at a rental of $95 per month. The lease was for five years with option for renewal for an additional five years. The grounds for cancellation assigned were "that said lease was given without any consideration; that the rent provided is unconscionably low; that said lease was obtained from decedent by defendant Robson while acting in a fiduciary capacity for deceased; that same was taken by defendant with notice of plaintiff's rights under said agreement and purported will and for the purpose of defeating plaintiff's rights as real owner of the premises."

Plaintiff's action to cancel the lease is a part of the second count for cancellation of her deed and the deed by which record title to the Dundas and Riverview properties were transferred to Dr. Kemp. It is clearly based upon the same theory, to wit, plaintiff's beneficial ownership of the property, her right to rescission of the contract of July 10, 1946 and her right to cancellation of her deed and the restoration of legal title to her. She therefore alleged that defendant Robson took with notice of plaintiff's rights both as the true owner of the property and with notice of the agreement of July 10, 1946.

The trial court found the facts to be "that the only consideraation for the execution of the lease was the rents, covenants and agreements to be paid, kept and performed by the lessee; * * * that said lessee was given the privilege to subrent or sublet the whole or any portion without the consent of the lessor; to assign said lease without the consent of the lessor and thereafter be relieved personally of liability; and that on the original lessee's death the lease shall inure to the benefit of the lessee's heirs, executors, administrators, successors and assigns and that they could terminate the lease by giving thirty days' notice. Said lease also required the lessor to keep the premises in good tenantable condition, and to make all repairs, both interior and exterior; to pay all taxes; to furnish heat, and hot and cold running water, and to pay all costs of upkeep and maintenance of the premises; and that on failure so to do, the lessee could pay for same and deduct same from rental payments. * * * .

"That said lease * * * was made * * * at a time when Dr. Kemp was a very sick man * * * that he was aware of the possibility of an early demise and had stated that he was going to give defendant Robson a lease so that she would [692] be protected if anything happened to him; that she was his confident and handled his business affairs and was in a confidential relationship with him; that prior to making the lease she knew of the terms of the agreement of July 10th and of Dr. Kemp's prior will of July 10th; * * * that she took the lease with full knowledge of the binding obligations which then existed on the part of the decedent in favor of his wife; that the lease diminishes the value of the property by reason of its remarkable provisions, particularly as to cancellation privileges."

The court held "that said lease was testamentary in character and was made in order to diminish and defeat the rights of plaintiff and to protect and serve the interests of defendant Robson; that said defendant was not an innocent third party as a purchaser for value; and that said lease became voidable and is at the request of plaintiff now declared void and cancelled."

The decree for cancellation of the lease is subject to the same defect that the decree for specific enforcement is subject to, to wit, that the pleadings are framed upon the theory that plaintiff was the beneficial owner of the real estate; that she entered into the contract with her husband for reciprocal wills; that as a part of that transaction she conveyed her said real estate to her husband; that the conveyance was obtained by fraud, duress, mistake, abuse of confidential relations and that there was a lack of and a failure of consideration; that she had the right to rescind the contract and recover her property; that she rescinded the contract and was entitled to a decree for rescission of the contract, the cancellation of

her deed and the restoration of her title to her; and that she was further entitled to the cancellation of the lease on the particular property (Dundas), since the lease was taken with a knowledge of plaintiff's rights. On the other hand, relief was granted to plaintiff on the theory that, although plaintiff was not entitled to cancellation of the contract and deeds or to a restoration of legal title to her, she was entitled to certain specific property rights in the described real estate, to wit, a life estate and other rights by reason of the contract and agreed will of July 10, 1946 and in accordance therewith; that the contract gave plaintiff, as of that date, certain ''fixed and irrevocable rights'' in this specific real estate, although the specific real estate was not mentioned or described in the will executed on July 10, 1946, and although the will was not intended to speak until testator's death; and that the contract took from Dr. Kemp the control of this specific property during the remainder of his lifetime so that the lease in question diminished and partially defeated the fixed, irrevocable and superior rights of plaintiff under the contract of July 10, 1946. In other words, relief was granted to the plaintiff and the lease was cancelled upon the basis of a title and property rights in plaintiff that plaintiff did not claim or seek to have established by her pleadings.

It is clear that relief was granted to plaintiff upon a theory not pleaded and not tried with either the express or implied consent of the parties. The decree cancelling the lease must fall with the decree granting plaintiff specific performance of the contract of July 10, 1946 and fixing plaintiff's rights in accordance with Dr. Kemp's will of that date.

Since plaintiff may elect to amend her pleadings and proceed against the lease on the theory that it adversely affects real estate validly and beneficially owned by Dr. Kemp in his lifetime and in which plaintiff has now acquired a one-half interest by her election, the cause with reference to the lease should be remanded.

The judgment is reversed and the cause remanded with reference to the lease. All concur.