Bill SILLIMAN and Violet Silliman, his
wife, and Robert L. Lewis,
Plaintiffs-Appellants-Respondents,

v.

Jerry C. CHRISMAN and Helen L.
Chrisman, his wife,
Defendants-Respondents-Appellants.

Nos. 11012, 11016.

Missouri Court of Appeals,
Southern District,
Division Three.

July 5, 1979.

James R. Robison, Robison & Blanton, Dwight Crader, Sikeston, for plaintiffs-appellants-respondents.

Joe Welborn, Briney, Welborn & Spain, Bloomfield, for defendants-respondents-appellants.

MAUS, Judge.

This is a distinctive action for specific performance. It arises from a lease of, with an option to purchase, an 850-acre farm. The plaintiffs are the Lessees-Optionees Bill Silliman and Violet Silliman, his wife, (herein referred to as Sillimans) and their assignee Robert L. Lewis (herein referred to as Lewis). The defendants are Lessors-Optionors Jerry C. Chrisman and Helen L. Chrisman, his wife, (hereinafter referred to as defendants Chrisman). The action is distinctive because defendants Chrisman owned only an undivided one-half interest in 1700 acres of which the 850-acre farm was called the north half.

In this court tried case no one requested findings of fact and none were made. No opinion containing the grounds for the decision was given. That being so, all fact issues shall be considered as having been determined in accordance with the result reached. *Stringer v. Reed*, 544 S.W.2d 69 (Mo.App.1976). The judgment is to be affirmed if it can be sustained upon any legal basis, *Stewart v. Zuellig*, 336 S.W.2d 399 (Mo.1960), and unless "there is no substantial evidence to support it, . . . unless it erroneously declares the law, or unless it erroneously applies the law." *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976).

So reviewing the evidence, the following is an outline of the salient facts. On February 1, 1974, title to the 1700-acre tract was conveyed to Jerry C. Chrisman and Helen L. Chrisman, his wife, and Howard Chrisman (Uncle of Jerry Chrisman) and Lollie Chrisman, his wife. On January 31, 1975, Howard and Lollie Chrisman conveyed their interest in a 2.62-acre tract, which tract is a part of the north 850 acres, to Jerry and Helen Chrisman. A house, tool shed and grain bin were located on this 2.62-acre tract. In the fall of 1975 Jerry C. Chrisman decided to quit farming and return to his job on the railroad. Sometime that fall Jerry and Howard verbally agreed upon a division whereby a tract called the north 850 acres would belong to Jerry and the south 850 acres to Howard. There is no evidence that Lollie Chrisman approved or even knew of this agreement. Helen Chrisman was shown to have been present when this verbal agreement was mentioned to attorney Mitchell.

On November 21, 1975, Jerry and his wife granted to A. B. Smith, Jr., an option expiring January 20, 1976, to purchase the north 850 acres for $535,000. This option was not exercised. The property was listed for sale with broker Felix Hampton. On February 5, 1976, Hampton brought Bill Silliman (who had bought and sold farms) to Jerry Chrisman as a prospective purchaser. The three, with Silliman's brother, toured the farm. An agreement was reached for a lease with an option to purchase. The group then went to an attorney who drafted all of Bill Silliman's contracts on real estate for the preparation of the lease-option. The instrument was signed the following day.

The lease was for a period from February 6, 1976, to December 31, 1976. The expressed rental was $40,000 with $20,000 paid on execution and $20,000 to be paid on November 1, 1976. The option price was $500,000, with the rental to be applied on that price. The option was to be exercised on or before November 1, 1976, and if exercised, the sale consummated on January 2,

1977. Upon consummation, one half of the indebtedness then in the amount of $404,-800 secured by a deed of trust on the 1700 acres was to be assumed. An additional $60,000 was to be paid in cash and a note secured by a second deed of trust given for the balance.

The most serious factual dispute concerned whether or not Bill Silliman at the time of the execution of the lease-option knew that Jerry and Helen Chrisman owned only an undivided one-half interest in the north 850 acres. There was evidence that while viewing the property Jerry mentioned that Howard had a half interest in the 1700 acres and they were going to divide it. Jerry showed Bill Silliman where the line was *going to be* and told him the *house was already his.* The attorney upon inquiry was told by Jerry that he wasn't sure how title was held; that he and Howard had agreed upon a division and it wasn't necessary for anyone to sign but Jerry and his wife. The evidence clearly supports the conclusion evidently reached by the trial court: that all parties to the instrument knew that Jerry and his wife owned only an undivided one-half interest, but, apparently relying upon a verbal agreement with Howard, they nevertheless agreed to the lease and option for the north 850-acre tract.

The day after the instrument was signed Jerry told his uncle he had sold the 850-acre tract. His uncle without knowing the price said he made a mistake. Two or three times Jerry asked for a deed but each time his uncle said no.

Some three or four weeks later Bill Silliman talked to Howard about renting the south 850 acres. Howard told him that he had talked with Jerry about splitting the farm, but that he would not sign to sell the farm as he would rather buy farm land. As Bill Silliman put it, "I found out it was in a mess."

Nevertheless, by a letter mailed October 14, 1976, Bill and Violet Silliman exercised the option. Then on October 22, 1976, they executed an assignment (the terms of which will be discussed later) to Lewis. Lewis

had been told of the status of the title. Lewis paid the second rental payment of $20,000 to Jerry Chrisman.

On December 30, 1976, Bill Silliman, Lewis and their attorney went to the office of Jerry Chrisman's attorney. They tendered payment of the balance of the purchase price. Silliman and Lewis offered to take an undivided one-half interest in the 1700 acres. In response, they were offered a deed of an undivided one-half interest in the north 850 acres.

In their petition plaintiffs Silliman and Lewis alleged the execution of the lease-option, the assignment, the two $20,000 rental payments, the exercise of the option, tender of performance and demand for a deed as required in the lease-option. They prayed for specific performance or in lieu thereof damages and for general relief. The trial court denied specific performance but awarded plaintiffs Sillimans $76,500 for damages for breach of contract. Lewis was denied recovery. Cross-appeals were taken. The plaintiffs assert the trial court erred (1) in not ordering the defendants to convey an undivided one-half interest in the 1700 acres; (2) in not ordering the defendants to convey an undivided one-half interest in the north 850 acres with an award of damages for failure to convey full title; (3) in denying recovery to Lewis; and (4) excluding the testimony of Lewis as to the value of the property in question. The defendants assert error (1) in awarding damages to Sillimans because of their assignment to Lewis; and (2) the insufficiency of the evidence to support the award of damages.

■ In asserting their claim to an undivided one-half interest in 1700 acres plaintiffs cite §§ 359 and 368, Restatement of Contracts, dealing with decrees not identical with the performance called for by a contract. They argue that if the court awarded to them an undivided one-half interest in the 1700 acres the defendants would be in the same position as if the division had been made and defendants performed the contract. Plaintiffs' argument is ingenious. It is true that in some circumstances and to some extent equity will

grant specific performance not identical with the terms of the contract, most often part performance with compensation. 81A C.J.S. Specific Performance § 191.

■ However, it is a fundamental maxim that "a court cannot make a contract for the parties and then decree its performance." *Kerrick v. Schoenberg*, 328 S.W.2d 595, 599 (Mo.1959). Also, *Blankenship v. Porter*, 479 S.W.2d 409 (Mo.1972). 71 Am.Jur.2d Specific Performance § 211. We have been cited to, and have found, no authority that a court of equity may in an action for specific performance decree satisfaction of a contract by directing the conveyance of real property other than that described in the contract. The authority we have found is to the contrary.[1] We suspect the paucity of authority is because of the fundamental soundness of the maxim quoted above. Each tract of real property is regarded as unique. This is the recognized basis for decreeing specific performance of a contract to convey real property.[2] It would be anomalous for equity to assume jurisdiction of a contract to convey a tract of real property because it was unique and then order satisfaction of that contract by the conveyance of real property not described in the contract. We hold the trial court did not err in not directing a conveyance of an undivided one-half interest in the 1700-acre tract.

■ The plaintiffs then assert that if they were not entitled to a conveyance of an undivided one-half interest in the 1700 acres, they should have been awarded an undivided one-half interest in the described 850 acres plus damages for failure to convey the other half. It is established that the plaintiffs, even though they knew of the deficiency of defendants' title, could have, without claiming an abatement of the purchase price, "waive such requirement and take what title the seller has". *Wilkinson v. Vaughn*, 419 S.W.2d 1, 7 (Mo.1967). Also see *Torelle v. Templeman*, 94 Mont. 149, 21 P.2d 60 (1933).

■ Their right to take that title and insist upon an abatement of the purchase price is not so established. It is a recognized principle that if a vendee does not have notice of the deficiency of the vendor's title, either as to quantity or quality, to the real property he has agreed to convey, the vendee may under some circumstances have specific performance to the extent the vendor can perform, with an abatement of the purchase price.[3] On the other hand when the vendee at the time the contract is made has notice of that deficiency in title, the decisions most often deny a conveyance of that title if the vendee also demands an abatement of the purchase price. The bases for such decisions vary, ranging from the maxim that equity will not make a contract for the parties to the discretionary nature of the remedy of specific performance. The latter is founded upon the proposition, in the nature of the clean hands doctrine, that a vendee cannot invoke the aid of equity when he knew the vendor lacked the ability to perform the contract. While the bases assigned are not altogether satisfying, the overwhelming weight of authority is that in the absence of compelling circumstances to the contrary, a vendee with notice of his vendor's deficiency of title may not insist upon specific performance with an abatement of the purchase price.[4] We are aware

1. *Adams v. Porter*, 129 La. 1085, 57 So. 526 (1912); *Halvorson v. Stecher*, 157 Wash. 257, 288 P. 925 (1930); *Cashman v. Bean*, 226 Mass. 198, 115 N.E. 574 (1917).

2. *Wilkinson v. Vaughn*, 419 S.W.2d 1 (Mo. 1967).

3. 81 C.J.S. Specific Performance § 23.

4. *In re Estate of Hayhurst*, 478 P.2d 343 (Okl. 1970); *Schneider v. Davis*, 194 Md. 316, 71 A.2d 32 (1950); *Bellamah v. Schmider*, 68 N.M. 247, 360 P.2d 656 (1961). Decisions to that effect from 17 states are cited in 81 C.J.S. Specific Performance § 23, p. 748. "The general doctrine of the right of the vendee to specific performance with an abatement from the purchase price is qualified by an important limitation—that it cannot be invoked by a purchaser who, at the time of the making of the contract, had notice of the fact that the vendor had a limited or undivided interest in the land, or that his title was defective, or the quality deficient, or that he had title to a part only of the land sold." 71 Am.Jur.2d Specific Performance § 131, p. 169. Also see Williston on Contracts,

of the dictum to the contrary in regard to a vendee's knowledge of the marital status of a vendor whose wife did not sign in *Tebeau v. Ridge.*[5] We are also aware of such cases as *English v. Jones*, 154 Tex. 132, 274 S.W.2d 666 (1955) in which the vendor had the ability to acquire title but declined to do so. We need not, and do not, decide under what circumstances this limitation is applicable. The factors that may be considered are many. For example, the conveyance of the defendants' one-half interest in the north 850 acres would force upon Howard and Lollie Chrisman separate co-tenancies in two 850-acre tracts rather than one co-tenancy in one 1700-acre tract. We do decide that under the circumstances of this case, particularly in view of the procedural aspect hereafter discussed, the trial court did not abuse its discretion in not awarding the plaintiffs an undivided one-half interest in the north 850 acres, plus damages.

Irrespective of the discussion above, there is a distinct compelling reason why the action of the trial court was correct. Under most circumstances, whether or not a vendee will accept a materially deficient title of his vendor, with or without abatement, is at the election of the vendee. A vendor may not force such a title on the vendee.[6] Such an election by a vendee is more an election of rights than an election of remedies.[7] A vendee's election should be affirmatively made and pleaded.

In this case there was no evidence of such an election before the trial court. There was evidence that Mr. Lewis and Bill Silliman on December 30, 1976, offered to take a deed to an undivided one-half interest in the 1700 acres, but they did not express such a desire in their testimony. There was no evidence of an election to accept a conveyance of an undivided one-half interest with abatement. Even though plaintiffs had knowledge of the deficiency before suit, the petition did not plead, alternatively or otherwise, an election. The prayer was for specific performance of the contract as written or in lieu thereof for damages. The power of the court was limited to the issues framed by the pleadings and any other issues tried by consent.[8] In the absence of an affirmative election, the power of the court was not expanded to the extent of such part performance by the prayer for general relief.[9]

In this case the trial court was faced with the issues of specific performance of the contract as written, or in lieu thereof, damages. Since such specific performance was impossible it was correctly denied and the alternative prayer granted.[10]

The plaintiffs allege error in that damages were not awarded to Lewis because the Sillimans had assigned their interests under the contract to him. Defendants allege error in awarding damages to Sillimans for the same reason. It is true the interests of Sillimans were assignable and that generally speaking an assignee may enforce the contract if his assignors could have done so. *Michaud v. Ruch*, 545 S.W.2d

§ 1436 (3rd ed. 1968); J. Pomeroy & J. Mann, Pomeroy's Specific Performance of Contracts § 442 (3rd ed. 1926). Contra, *Wittick v. Miles*, 274 Or. 1, 545 P.2d 121 (banc 1976).

5. 261 Mo. 547, 170 S.W. 871, L.R.A. 1915C, 367 (banc 1915), overruling *Aiple-Hemmelmann Real Estate Co. v. Spelbrink*, 211 Mo. 671, 111 S.W. 480, 14 Ann.Cas. 652 (banc 1908). An abatement was allowed for the interest of a wife who was not a party to an oral contract made by her husband to convey to their son. *Scheerer v. Scheerer*, 287 Mo. 92, 229 S.W. 192 (1921).

6. 81 C.J.S. Specific Performance § 23; 71 Am. Jur.2d Specific Performance §§ 129, 132.

7. 25 Am.Jur.2d Election of Remedies § 7.

8. *Branner v. Klaber*, 330 Mo. 306, 49 S.W.2d 169 (1932).

9. "The rule that under a general prayer for relief in an equity suit a party may have any relief to which he may show himself entitled is limited to relief founded on and consistent with the allegations set out in the petition." *La Presto v. La Presto*, 308 S.W.2d 724, 726 (Mo. 1958). Also see *Kemp v. Woods*, 363 Mo. 427, 251 S.W.2d 684 (1952); *Stickle v. Link*, 511 S.W.2d 848 (Mo.1974); *Blessing v. Blessing*, 539 S.W.2d 699 (Mo.App.1976).

10. *Tinnon v. Tanksley*, 408 S.W.2d 98 (Mo. 1966).

703 (Mo.App.1976). But, both could not recover for the failure to convey.

■ "The operation and effect of an assignment may be limited by exceptions, reservations, conditions, or restrictions contained therein, so long as they do not violate statutory provisions or general rules of policy." 6A C.J.S. Assignments § 78, p. 722. The assignment in question provided, "[i]n the event Lewis, for any reason, is unable to obtain title to said 850 acres [sic] tract or title to an undivided one-half interest in the said 1700 acres [sic] tract, this agreement is null and void and of no effect," and that the note given as consideration should be returned. Lewis did not obtain such a title and damages were properly awarded to Sillimans.

■ In connection with the issue of damages, the plaintiffs allege error in excluding an opinion of value of Lewis. By profession he is an engineer and county surveyor. He bought farm land and owned farm land, including one in Stoddard County. Plaintiffs urge that he was qualified to testify because he owned an interest in the land in question. Not always is an owner competent. *Shelby County R-IV School District v. Herman*, 392 S.W.2d 609 (Mo. 1965). An owner of property is permitted to testify as to its value because of his presumed familiarity with that property. At the most Lewis had a conditional interest in a contract concerning the property. His familiarity with this property as demonstrated by the record was that he and his employees planted 260 acres of wheat in the fall of 1976 and cultivated the land in the spring of 1977. He did not state he was familiar with the values of property in Stoddard County. The qualification of Lewis was "largely, but not wholly, for determination by the trial court whose discretion ordinarily will not be overruled unless abused or exercised in clear error of law". *State ex rel. State Highway Commission v. Heim*, 483 S.W.2d 410, 414 (Mo. App.1972). The trial court did not abuse its discretion.

■ The defendants assert that the award of damages is not supported by competent evidence because the plaintiffs' experts considered sales of farms 20, 10 and 5 miles distant as comparable sales but did not consider sales of adjoining farms as comparable. The experts offered by the plaintiffs were real estate brokers of long experience. What sales they considered to be comparable and not to be comparable and the reasons therefor was a subject thoroughly developed by counsel and by the trial court. This evidence went to the weight to be given to their opinions, and was obviously so considered by the trial court. But, it does not cause those opinions, given without objection or motion to strike, *State ex rel. State Highway Commission v. Heim*, supra, not to be substantial evidence properly considered by the trial court.

■ The defendants then suggest the plaintiffs' recovery should be limited to the amount paid and any special damages. We do not agree. "It is not unlawful for a person to contract to sell and convey something he does not own but expects to acquire, and, if he unqualifiedly undertakes to do that which later he finds he cannot perform, he should suffer the liability the law imposes upon the contract breaker." *Robinson v. Pattee*, 359 Mo. 584, 588, 222 S.W.2d 786, 788 (1949). That is the loss of the bargain. *Dunning v. Alfred H. Mayer Company*, 483 S.W.2d 423 (Mo.App.1972).

■ Lastly, the plaintiffs complain the damages are inadequate and the defendants complain they are excessive. The opinions as to the value to be used in the calculation of damages ranged from $800 to $591 per acre. The determination of the trial court was within the range of the evidence and will not be disturbed on appeal. *State ex rel. State Highway Commission v. Bopp*, 516 S.W.2d 38 (Mo.App.1974); *Letsch v. Pickworth*, 559 S.W.2d 77 (Mo.App.1977).

The judgment is affirmed.

BILLINGS, P. J., FLANIGAN, C. J., and GREENE, J., concur.