**NEW LIFE COMMUNITY CHURCH OF GOD, Appellant–Plaintiff,**

v.

**Russell ADOMATIS and Dorothy S. Adomatis, Appellees– Defendants.**

**No. 29A05–9602–CV–72.**

Court of Appeals of Indiana.

Oct. 23, 1996.

Rehearing Denied Jan. 7, 1997.

---

**8.** In fact, this was the precise procedure used by the police in *Green,* albeit absent a valid search

warrant.

Curtis J. Dickinson, Jerry L. Craig, Dickinson & Associates, Indianapolis, for Appellant–Plaintiff.

K. Sean Fleck, Julia S. Weaver, Holt, Fleck & Free, Noblesville, for Appellees–Defendants.

## OPINION

BARTEAU, Judge.

New Life Community Church (Church) appeals the trial court's order rescinding the Conditional Land Sales Contract (Land Contract) entered into between the Church and Russell and Dorothy Adomatis (Adomatis). Four issues are presented for consideration:

1. Whether the Findings of Fact are supported by the evidence and whether the Findings support the Judgment ordering rescission of the Land Contract against the will of the innocent purchaser?

2. Whether the Findings of Fact are supported by the evidence and whether the evidence supports the Judgment denying the purchaser's remedy of specific performance in light of the Seller's breach of the Land Contract?

3. Whether the Findings of Fact are supported by the evidence and whether the Findings support the Judgment that the Seller's obligation of the Land Contract was limited to the installation of perimeter drains to an exit point on the property and that the Seller had no obligation to comply with county regulations in existence at the time the Land Contract was executed?

4. Whether the Findings of Fact are supported by the evidence and whether the Findings support the Judgment that the Church is not entitled to any damages?

### *FACTS*

Adomatis [1] and the Church entered into a Land Contract for the purchase of approximately 15 acres of farmland owned by Adomatis. Special Provision 15(C) of the Land Contract states: **"Seller to install perimeter drains for surface water drainage."** The

---

1. Russell Adomatis is a Realtor by profession.

Church made the first two of three payments required under the Land Contract. Before the final payment was due, the Church began inquiring of Adomatis concerning his intention to install the perimeter drains. Adomatis responded that he had located an existing field tile drain on the property and believed that satisfied his obligation under the Land Contract. The Church retained counsel and notified Adomatis that he was in anticipatory breach of the Land Contract. The Church advised Adomatis that he could cure the breach by either performing the duty under the contract or agreeing to an offset of the balance of the purchase price in an amount sufficient to hire another to install the perimeter drains. The Church later advised Adomatis that it would delay final payment under the Land Contract until the matter of Adomatis's performance was resolved. On August 15, 1993, the date full performance of the Land Contract was due, the Church did not tender its final payment because Adomatis had not installed the perimeter drains. On December 2, 1993, the Church filed a Complaint for Specific Performance, Declaratory Relief and Damages. On August 8, 1994, the trial court granted partial summary judgment in favor of the Church on the issue of liability. R. 67.[2] The matter was then set for a damage hearing.

At the damage hearing, the dispute centered on the meaning of the phrase "perimeter drains." The Church contended that the phrase encompassed installation of perimeter drains that would meet the Church's needs for the size and scope of the proposed building and that would satisfy all zoning and code requirements. The Church also contended that installation of the drains included connecting the drains to an existing drainage system. The Church presented extensive evidence concerning the necessity and expense of providing proper drainage for the proposed church and amenities. The Church claimed as damages $80,584 for drain construction, $2,500 for design and construction

documents for perimeter drains and off-site drainage, $4,497 for rent due to the Church's inability to construct their building, $400 for easements, $50 for a road cut fee, $50 for a drainage outlet request permit fee, and $6,493.72 in increased cost due to a rise in interest rates. The Church requested specific performance of the terms of the Land Contract or damages incurred as a result of Adomatis's breach of the Land Contract.

Adomatis presented evidence that perimeter drainage was not needed on the property and alternatively that cutting of "swales"[3] in the land would accomplish the intent of the parties. Adomatis also contended that the contract did not require him to connect any drainage system to an outlet drain.

The trial court took the matter under advisement and on October 26, 1995, entered a judgment rescinding the contract. The judgment reads in part as follows:

### Findings of Fact

1. On February 28, 1992, the plaintiff, New Life Community Church of God ("New Life") and the defendants, Russell and Dorothy Adomatis ("Adomatis") entered into a Conditional Sales Contract for the sale of real estate by Adomatis to New Life situated at 161st and Hazeldell, Noblesville, Indiana 46060.

2. As a Special Provision of the Conditional Sales Contract, the seller Adomatis promised to do the following: "Seller to install perimeter drains for surface water drainage."

3. The plain meaning of "to install perimeter drains for surface water drainage" is to place drains or tile in the ground around the edge of the property. As defendant's witness, Phil Paull of Final Grade Excavating, testified, "swales" are not perimeter drains but "for perimeter *drainage.*"

---

2. The court's commissioner granted summary judgment on the issue of liability. The regular trial judge later interpreted the scope of the summary judgment. He determined that the grant of summary judgment encompassed a determination that provision 15(C) was not ambiguous, that it was binding on the parties, and that

parol evidence and matters occurring prior to execution of the Land Contract would not be admissible. R. 325.

3. "Swales" are a contouring of the land to accomplish drainage.

4. Adomatis has not installed the perimeter drains for surface water drainage.

5. Adomatis knew at the time he entered the Conditional Sales Contract that New Life intended to construct a church building on the property and that it did not intend to use the property for agricultural purposes. Neither Adomatis nor New Life knew the scope of the church building project at the time they entered the Conditional Sales Contract.

6. The purchase price for the real estate was $125,000.00. New Life was to make three payments: $20,000.00 at the closing on February 28, 1992, $25,000.00 on August 28, 1992[,] and the unpaid balance of principal and interest, approximately $89,-000.00, on or before August 15, 1993.

7. New Life made the first two payments of $20,000.00 and $25,000.00 but, as Reverend Walters testified[,] did not make the final payment because of Adomatis' failure to install the perimeter drains.

8. Reverend Walters testified that New Life did not commence construction of the new church as planned in June 1994 with occupancy in September 1995 as a result of Adomatis' failure to install the perimeter drains.

9. The Conditional Sales Contract does not require Adomatis to provide an adequate drainage outlet, a storm sewer system or to seek approval from authorities for the perimeter drains as New Life contends.

10. Any finding of fact which is a conclusion of law shall be deemed a conclusion of law.

### Conclusions of Law

1. This Court has jurisdiction over the parties and the subject matter.

2. Adomatis breached the contract when he failed to install perimeter drains for surface water drainage by the time New Life was to make final payment on the property in August 1993. Accordingly, on August 8, 1994, Partial Summary Judgment was granted to New Life on the basis that Adomatis had breached the contract by failing to install the perimeter drains.

3. The Court has three options in determining the outcome of this matter. It can order rescission, specific performance or award damages.

4. Specific performance is not appropriate as there is evidence that installation of perimeter drains would be inadequate given the scope of the church building project.

5. New Life elected to not make the final payment for the purchase of the property and to not commence construction of the church in June 1994. New Life could have elected to make the final payment and to commence construction of the church and then to seek damages for Adomatis' breach of the Conditional Sale Contract. Because of its decision, New Life is not entitled to damages for the design and construction documents by Weihe Engineers, Inc., the rent of Carmel school facilities, or increased costs due to a rise in interest rates. (Additionally, there was not sufficient evidence of the rise in interest rates even if it were a proper measure of damages.)

6. Because the parties contracted to have Adomatis install perimeter drains only and did not contract to have Adomatis install an adequate outlet drain or storm sewer system, New Life is not entitled to damages for the easement description for diagonal easement across the Adomatis property, the Hamilton County Highway Department road cut fee, or the Hamilton County Surveyor's Office drainage outlet request permit fee.

7. The only damages that are appropriate is [sic] the actual cost to install perimeter drains. However, neither party submitted evidence as to the cost of such installation. Consequently, the court is without sufficient evidence to award damages to New Life.

8. Rescission of the contract is the most fair remedy given the inadequacy of specific performance and the insufficient evidence on damages.

9. The Court orders the parties to rescind the Conditional Sales Contract which places them in the position they were prior to entering the contract. Adomatis is to pay to New Life $45,000 plus 8.0 percent

interest from the date New Life was to make final payment on the contract, August 15, 1993.

10. No evidence was submitted regarding New Life's attorney's fees. Therefore, no award is made.

R. 206–09.

### STANDARD OF REVIEW

■ When a party has requested specific findings of fact and conclusions thereon pursuant to Indiana Trial Rule 52(A), the reviewing court cannot affirm the judgment on any legal basis; rather, this Court must determine whether the trial court's findings are sufficient to support the judgment. *Vanderburgh County Board of Commissioners v. Rittenhouse,* 575 N.E.2d 663, 665 (Ind.Ct. App.1991), *trans. denied* (1992). In reviewing the judgment, we must first determine whether the evidence supports the findings and second, whether the findings support the judgment. *Id.* The judgment will be reversed only when clearly erroneous, i.e., when the judgment is unsupported by the findings of fact and conclusions entered on the findings. *DeHaan v. DeHaan,* 572 N.E.2d 1315, 1320 (Ind.Ct.App.1991), *trans. denied* (1992). Findings of fact are clearly erroneous when the record lacks any evidence or reasonable inferences from the evidence to support them. *Id.* To determine whether the findings or judgment are clearly erroneous, we consider only the evidence favorable to the judgment and all reasonable inferences flowing therefrom, and we will not reweigh the evidence or assess witness credibility. *Id.*

■ When as here the trial court gratuitously enters specific findings of fact and conclusions, this same standard of review applies with one notable exception. When the trial court enters such findings *sua sponte,* the specific findings control only as to the issues they cover, while a general judgment standard applies to any issue upon which the court has not found. *In re Marriage of Snemis,* 575 N.E.2d 650, 652 (Ind.Ct. App.1991). We may affirm a general judgment on any theory supported by the evidence adduced at trial. *Id.*

### RESCISSION OF THE CONTRACT

Adomatis failed to install perimeter drains as required by the terms of the contract. While the Church had the option to pursue rescission of the contract by asserting that Adomatis's failure to install the drains constituted a material breach of the contract, it instead opted to affirm the contract and seek specific performance or damages. The trial court granted summary judgment in favor of the Church on the issue of whether Adomatis breached the contract by failing to install perimeter drains. The matter was then set for trial on all issues but liability.

At trial, the parties debated the meaning of the term "perimeter drains." The Church argued that the contract required Adomatis to install a complete drainage system. Adomatis argued that its obligation was only to accomplish surface drainage. The trial court determined that the contract called for something in the middle. It determined that the plain meaning of "to install perimeter drains for surface water drainage" was to "place drains or tile in the ground around the edge of the property" and did not "require Adomatis to provide an adequate drainage outlet, a storm sewer system or to seek approval from authorities for the perimeter drains." R. 206–07.

■ The court then concluded that it had three options: rescission of the contract, specific performance of the contract or damages. All of the proceedings after the partial summary judgment were limited to a determination of the meaning of "install perimeter drains for surface water drainage." Neither party to the litigation, either through pleading or at numerous hearings, requested rescission of the contract. The first mention of rescission occurred in the trial court's conclusion of law. The Church contends that because rescission was not requested, the trial court's conclusion that it had the option to rescind the contract was erroneous.

Adomatis contends that because the court was acting in equity pursuant to the Church's request for specific performance, the court had the authority to fashion an equitable remedy. Adomatis cites *Local 715 v. Michelin America Small Tire,* 848 F.Supp. 1400

(N.D.Ind.1994) in support. The court in *Local 715* stated the principle that one who invokes the equitable power of the court submits himself to the imposition of such terms as well-established equitable principles require. *Id.* at 1412.

While we do not disagree with the principle stated in *Local 715*, we do disagree with Adomatis's contention that the principle is broad enough to grant a court authority to order rescission of a contract when neither party to the contract has requested such a remedy. Rescission of a contract is not automatically available. Rather, there must be some basis to support the rescission such as fraud, illegality, mutual mistake, or a contract provision providing for rescission. *See In Re Frey's Estate,* 223 Pa. 61, 65, 72 A. 317, 318 (1909) ("Inadequacy of price, improvidence, surprise, and mere hardship, none of these, nor all combined, furnish an adequate reason for a judicial rescission of a contract. For such action something more is demanded, ——such as fraud, mistake or illegality.") Here no such grounds exist. The trial court ordered rescission because it found the contract terms were inadequate for the church's needs. Inadequacy of contract terms is an invalid reason for rescission. "Indiana courts recognize the freedom of parties to enter into contracts, and indeed, presume that the contracts represent the freely bargained agreement of the parties." *Parker v. Camp,* 656 N.E.2d 882, 885 (Ind.Ct.App. 1995). It is in the public's best interest that the freedom of contract not be unnecessarily restricted. *Mutual Sec. Life Ins. Co. v. Fidelity & Deposit Co. of Maryland,* 659 N.E.2d 1096, 1100 (Ind.Ct.App.1995), *trans. denied* (1996). "The law generally allows competent persons the utmost liberty of contracting, and their contracts, when entered into freely and voluntarily, are enforced by the courts." *Id.* The trial court was not at liberty to interfere with the parties' freedom of contract or to rewrite the contract terms. Thus, the court's judgment ordering rescission of the contract must be reversed.

Further, the remedy of rescission in this case was reserved solely to the Church, as the non-breaching party. It had the option to avoid the contract or to enforce it.

The Church chose not to seek rescission and in light of the Church's election, the court had no authority to order rescission. *See Holmes v. Randolph,* 610 N.E.2d 839 (Ind. 1993) (a judgment which does not conform to the pleadings is beyond the court's jurisdiction and void); *Surprise v. Porter,* 226 Ind. 375, 80 N.E.2d 107 (Ind.1948) (jurisdiction of the court was limited by the pleadings before the court invoking that jurisdiction); *Kemp v. Woods,* 363 Mo. 427, 434, 251 S.W.2d 684, 688 (1952) ("The powers of a court of equity are limited to the cause of action and issues made by the pleadings.... Under a general prayer for relief, an equity court may not grant relief inconsistent with the pleadings and trial theory and repugnant to the specific prayers for relief."). *Id.*

## SPECIFIC PERFORMANCE

The church, as the non-breaching party, sought specific performance of the contract. Specific performance is a matter of course in contracts involving the purchase of real estate. *Ridenour v. France,* 442 N.E.2d 716, 718 (Ind.Ct.App.1982). This is so because each piece of real estate is considered unique, *Unger v. Indiana & Michigan Elec. Co.,* 420 N.E.2d 1250, 1261 (Ind.Ct.App.1981), without an exact counterpart anywhere else in the world. *Bauermeister v. Sullivan,* 87 Ind.App. 628, 634, 160 N.E. 105, 107 (1928). Whether to grant specific performance is a matter within the trial court's sound discretion. *Ridenour,* 442 N.E.2d at 718. "However, the trial court's decision not to grant specific performance must be reversed if the decision was an abuse of discretion." *Id.* (citing *Claise v. Bernardi,* 413 N.E.2d 609, 612 (Ind.Ct.App.1980)). "A decision is an abuse of discretion if it is clearly against the reasonable deductions which may be drawn from the facts before the court." *Id.*

Here, the trial court determined that the contract was clear and unambiguous, that it required the installation of tile or drains around the edge of the property, and that Adomatis failed to install the drains required by the contract. The trial court's conclusion of law No. 4, denying the Church the remedy of specific performance, reads: "Specific performance is not appropriate as there is evi-

dence that the installation of perimeter drains would be inadequate [4] given the scope of the church building project." R. 208. However, in finding of fact No. 5, the court determined that "Neither Adomatis nor [the Church] knew the scope of the church building project at the time they entered the Conditional Sales Contract." R. 207. Thus, even though the Church has now determined, based on their building plans, that perimeter drains alone will not accomplish their drainage requirements, such does not preclude specific performance of that for which they contracted. The Church sought specific performance of the contract and installation of "perimeter drains," whatever the trial court determined that phrase to entail, and the Church was entitled to specific performance. The trial court abused its discretion when it made the determination for the Church that specific performance of the contract, as defined by the court, would not be satisfactory. The trial court erred in denying the request for specific performance.

### INTERPRETATION OF PHRASE "PERIMETER DRAINS"

 Even though we have ordered specific performance of the contract, we must briefly address the Church's challenge to the trial court's determination that the language "install perimeter drains for surface water drainage" did not require Adomatis to connect the drains to an existing drainage system. The Church argues that because the county would not approve a drainage system on the property which did not carry the water to an approved destination, the contract necessarily required Adomatis to install a complete system. The trial court heard extensive evidence on this issue and found that the contract was clear and unambiguous on this issue and did not require installation of anything but the perimeter drains. The Church requested and prepared the perimeter drainage clause. If the Church wanted something more, it should have included it. We cannot say the trial court abused its

4. Adomatis argues that equity will not force or require that which is useless and that specific performance of the installation of the perimeter drains would be an exercise in futility. However-

discretion by limiting Adomatis's obligation to the clear language of the contract.

### DAMAGES

We need not discuss the Church's challenge to the trial court's denial of damages in light of our decision granting specific performance of the contract.

Reversed and remanded with instructions to grant specific performance in favor of the Church.

SHARPNACK, C.J., and HOFFMAN, J., concur.

er, neither the record before the trial court nor the court's finding that the drains would be "inadequate" support such a characterization.